**Robert D. DUNN, Appellant (Plaintiff Below),**

v.

**Samson S. CADIENTE, M.D., Appellee (Defendant Below).**

No. 49S04–8712–CV–1153.

Supreme Court of Indiana.

Dec. 16, 1987.

Rehearing Denied March 22, 1988.

Morris L. Klapper, Indianapolis, for appellant.

Richard L. Fairchild, Donn H. Wray, Stewart Irwin Gilliom Meyer & Guthrie, Indianapolis, for appellee.

ON CIVIL PETITION TO TRANSFER

DICKSON, Justice.

Plaintiff-appellant Robert D. Dunn (Dunn) initiated this appeal following a bench trial which resulted in a judgment awarding damages of $24,065.00 in his medical malpractice action against defendant-appellee Samson S. Cadiente, M.D. (Cadiente). The Court of Appeals found the award inadequate, reversed, and remanded for a new trial on damages only. *Dunn v. Cadiente* (1987), Ind.App., 503 N.E.2d 915, *reh. denied,* 505 N.E.2d 850. We now grant defendant's petition to transfer and vacate both the original and rehearing opinions of the Court of Appeals.

In appealing the trial court judgment, plaintiff presented essentially a single issue for review: whether the trial court's award is adequate. Our standard of review is prescribed by Trial Rule 52(A):

On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity

of the trial court to judge the credibility of the witnesses.

This standard of "clearly erroneous" is further emphasized in Appellate Rule 15(N)(6):

A verdict, finding, judgment, order or decision shall be reversed upon appeal as not supported by or as contrary to the evidence only when clearly erroneous, and due regard shall be given the opportunity of the finder of fact to judge the credibility of witnesses.

∎ On appeal of claims tried to the court without a jury, prior cases have observed that a judgment will be found clearly erroneous only when on the entire record the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Arnold v. Dirrim* (1979), Ind. App., 398 N.E.2d 442; *University Casework Systems, Inc. v. Bahre* (1977), 172 Ind.App. 624, 362 N.E.2d 155. When the specific issue on review relates to questions of inadequate or excessive damages, a damage award should not be reversed if within the scope of the evidence before the trial court, and the reviewing court may not reweigh the evidence or judge the credibility of the witnesses who presented it. *Indiana University v. Indiana Bonding and Surety Co.* (1981), Ind.App., 416 N.E.2d 1275.

The decision of the Court of Appeals below places emphasis upon language from *Thompson v. Town of Fort Branch* (1931), 204 Ind. 152, 163, 178 N.E. 440, 444, in which we stated that an error in the assessment of damages is established if "it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." However, *Thompson* did not involve questions of the extent or apportionment of damages proximately caused. In addition, the reliance in *Thompson* upon "uncontradicted evidence" as the operative criteria is not useful when the damage evidence is conflicting. In determining whether the judgment of the trial court is "clearly erroneous" under T.R. 52(A), the proper general standard to be applied is that an error in assessment of damages is established only if the amount of damages assessed bears no reasonable relation to the evidence favorable to the judgment and reasonable inferences therefrom.

The facts were summarized by the Court of Appeals as follows. "On November 7, 1980, Dunn was employed as a meat cutter at a grocery store. While carrying a forequarter of meat, he slipped and fell. As a result of this mishap, Dunn sustained bilateral inguinal hernias. In December, 1980, Cadiente performed right and left inguinal hernia surgeries on Dunn.

"In April, 1981, Cadiente readmitted Dunn to the hospital because he was continuing to experience considerable pain in the groin area. Cadiente re-operated on Dunn and found a partially entrapped spermatic cord and hydrocele, but no recurrent hernia.

"After the surgery, Dunn's right thigh became generally painful and swollen. Cadiente, then suspecting phlebitis or arterial thrombosis, ordered a vascular consultation. Dr. Malcolm Herring (Herring), a vascular surgeon, saw Dunn and suspected he had an infection. He recommended foregoing anticoagulant therapy in favor of antibiotics. After seeing no improvement with Dunn, Cadiente again operated on him on April 29, 1981. During this surgery, Cadiente found Dunn to have a thrombosed right saphenous vein (a superficial vein). On May 8, 1981, Cadiente discharged Dunn from the hospital. A few days later, at an office visit, Cadiente noted Dunn's leg was still swollen and painful. Cadiente last saw Dunn on May 29, 1981.

"On June 4, 1981, Dunn again saw Herring. Herring suspected from Dunn's symptoms he was not suffering from problems in the deep venous system. A venous flow study confirmed his suspicions Dunn had developed a deep venous insufficiency problem. Herring further stated Dunn was suffering symptoms associated with an earlier attack of phlebitis (post-phlebitic syndrome).

"Dunn's condition became cumulatively worse to the point where it was difficult for him to engage in activities which required him to stand or sit for any pro-

longed periods of time because his leg would become swollen and painful. Later, Herring noted Dunn developed recurring thromboses."

In addition to the foregoing factual summary by the Court of Appeals, the record shows that Dunn received extensive further treatment from Herring and later from Dr. Russell S. Dilley (Dilley), which included the discovery in January, 1984, that Dunn suffered from a congenitally absent right inferior vena cava, and received subsequent vascular surgery in December, 1984.

It is plaintiff's contention that his loss of income and medical expenses as of the time of trial totalled "no less than $65,700.00." He also argues that he was totally disabled and would suffer a future loss of earnings in excess of $600,000.00. In this appeal, he claims that "the disparity between the harm suffered and the amount awarded is readily apparent."

Cadiente presents four alternative scenarios to explain the trial court's assessment of damages:

1. Dunn failed to persuade the trial court that all of his injuries were proximately caused by Cadiente's negligence;

2. the substantial portion of plaintiff's medical problems were solely the direct result of a congenitally absent inferior vena cava;

3. If Cadiente unreasonably failed to initiate anticoagulent therapy through May 29, 1981, this resulted only in a "mild" deep vein insufficiency noted by Herring in June, 1981; and that Dunn's subsequent debilitating condition resulted from the development of new deep vein thrombi attributable to later medical decisions by others not to start anticoagulent therapy during the summer of 1981; and,

4. Cadiente's conduct caused none of Dunn's mild or severe deep vein thrombosis, but may have been found professionally negligent in failing to treat the thrombosed saphenous vein found during the April 29, 1981, exploratory surgery.

It is axiomatic that, before liability can be imposed, there must be proof that the defendant's negligence proximately caused the plaintiff's harm. *Yaney by Yaney v. McCray Memorial Hospital* (1986), Ind. App., 496 N.E.2d 135. An essential element of recovery in a negligence action is that the injury be the proximate result of a defendant's negligence. *Hartman v. Memorial Hospital of South Bend* (1978), 177 Ind.App. 530, 380 N.E.2d 583. In order for a plaintiff to carry his burden of proof, the evidence must establish the element of proximate cause connecting the alleged wrongful act with the injury. *Palace Bar Inc. v. Fearnot* (1978) 269 Ind. 405, 381 N.E.2d 858. Just because there is proof that *some* of the claimed injury and loss was caused by the breach of duty does not necessarily mean that *all* damages resulted from the breach.

■ There was ample evidence that Dunn suffered severe and extensive injury and losses from the severe deep vein thrombosis, but we discern in the record only the following evidence tending to directly show or explain any causal relation between defendant's alleged negligence and the full extent of injuries and losses claimed.

Q. Now, Dr. Dilley, do you have an opinion whether had appropriate measures been promptly taken in response to the signs of deep vein thrombosis, that the ensuing impairment to vascular function of the leg could more probably than not have been limited or avoided?

A. I think its [sic] unlikely that the problem could have been avoided entirely. However, I think that the degree of propagation of the clot could have been limited by early Heparin anticoagulations. An thus, the number of veins that clotted off and thus the degree of obstruction to the venous outflow in the leg could have been limited considerable [sic] had Heparin been started a couple of days after the last exploration or even the next day or something like that. My suspicion is that there was a clot in that vein much earlier than that. But I don't think that anybody

can be expected to have really nailed that down because there were other circumstances that were mitigating. (R. 228–229) Thus, plaintiff's medical expert stated that the resulting impairment to vascular function was to some extent inevitable notwithstanding the alleged negligence of the defendant.

Dunn correctly argues that his congenital anomaly should not relieve Cadiente from liability merely because the pre-existing physical condition makes Dunn more susceptible to injury. *Johnson v. Bender* (1977), 174 Ind.App. 638, 369 N.E.2d 936; *Parrett v. City of Connersville* (7th Cir. 1984), 737 F.2d 690, *cert. dismissed* 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820. However, a defendant is liable only "for the extent to which his conduct has resulted in an aggravation of the pre-existing condition, and not for the condition as it was." Prosser, Law of Torts, 4th Edition, p. 262.

Evidence was presented to the trial court that in the absence of an inferior vena cava, a patient "almost always eventually" is going to develop deep vein thrombosis, and that the hernia repair, standing alone, made Dunn "a prime candidate" to develop thrombosis. (Appellee's R. 180) Other medical testimony was presented that the absent inferior vena cava could have caused the deep vein thrombosis, and that an earlier start of anticoagulation therapy would not have had any effect in this case. (R. MacDougall certiorari response 37–38, 89).

A pre-existing condition or susceptibility, if aggravated by a defendant's conduct, may result in a defendant's full liability for the resulting injury and loss. However, if the pre-existing condition, standing alone, independently causes injury and loss, a defendant will not be liable for such damages. We find that the record contains evidence supporting the trial court's exclusion of damages for the losses, impairment, pain, and suffering related to the deep vein thrombosis and resulting vascular insufficiency.

To the extent that there may have been conflicting evidence regarding the extent to which all of Dunn's injuries and losses were causally related to Cadiente's conduct or the congenital anomaly, the question may be viewed as one of apportionment of damages. Upon this issue, Prosser favors the following approach:

> Where a logical basis can be found for some rough practical apportionment, which limits a defendant's liability to that part of the harm which he has in fact caused, it may be expected that the division will be made. Where no such basis can be found and any division must be purely arbitrary, there is no practical course except to hold the defendant for the entire loss, notwithstanding the fact that other causes have contributed to it.

Prosser, *supra.*, p. 314. Consistent with a plaintiff's burden to prove causation, we do not view this consideration as transferring to a defendant the burden to prove the existence of a logical basis for apportionment. The burden of proof remains with the plaintiff. In order to benefit from this rule, it is therefore plaintiff's burden to prove the absence of any such basis for apportionment. Viewing the evidence favorable to the judgment, we find it does not inescapably lead to the conclusion that apportionment is impossible. Thus the trial court did not err in failing to award damages for all of the injuries and losses claimed by plaintiff.

At the close of plaintiff's evidence, the trial court granted Cadiente's motion to dismiss certain portions of Dunn's claims of negligence. As a result of this ruling, the critical trial issue became whether during the period of April 26, 1981, to May 29, 1981, the plaintiff "had any sign(s) or symptom(s) which would have caused a reasonably prudent surgeon to administer anticoagulent therapy, order any study designed to reveal the presence or absence of deep vein thrombosis or deep vein insufficiency, or to seek further consultation from Dr. Herring or any other vascular surgeon." (R. 94) Of the three bases for liability thus remaining, either of two could have been found by the trial court without necessarily requiring his finding of resulting severe deep vein thrombosis or insuffi-

ciency. The trial court's judgment could have based upon its finding that Cadiente's conduct fell below the standard of care with respect to his decisions regarding the administration of anticoagulent therapy or as to the timing of his further consultation with Herring.

Cadiente argues that the trial court's judgment would be consistent with evidence showing that he was only responsible for Dunn's mild deep vein insufficiency of June, 1981, and that by September, 1981, Dunn had developed new deep vein thrombi which independently produced the debilitating condition and subsequent losses. Cadiente alternatively contends that the trial court may have limited liability to damages caused by failing to properly treat the thrombosed saphenous vein, but found such injury to be unrelated to the later development of deep vein thrombosis.

We agree that each of these scenarios are within the evidence presented. If the trial court judgment was based upon a finding of Cadiente's negligence with resulting damages excluding the subsequent development of severe deep vein insufficiency, the assessment of $24,065.00 damages could have been based upon Dunn's income loss of approximately $3,000.00 through early September, 1981, plus damages of $1200 per week for pain, suffering, and mental distress during this period of time. Such award would bear a reasonable relation to the evidence and thus not be clearly erroneous.

In its denial of rehearing, the Court of Appeals held that the absence of special findings of fact excepting any of plaintiff's injuries for lack of probable cause operates as a presumption that all of plaintiff's claimed injuries were proximately caused by the defendant's negligence, and that the proximate cause issue may not be reconsidered upon retrial. We find this view to be not only contrary to Dunn's burden at trial to prove the extent of damages proximately caused from the alleged breach of duty, but also contrary to Dunn's burden on appeal to demonstrate that the damages assessed bear no reasonable relation to the evidence favorable to the judgment. In addition, since neither party requested special findings of fact, we prefer to refrain from imposing upon the trial court any requirement to make special findings not otherwise required.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and PIVARNIK, JJ., concur.