**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID P. FRIEDRICH**
Wilkinson Goeller Modesitt
Wilkinson & Drummy, LLP
Terre Haute, Indiana

ATTORNEY FOR APPELLEE:

**KEITH L. JOHNSON**
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARLES L. MYERS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 77A01-1204-CT-142 |
| | ) | |
| GLEN L. WILLIAMS, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE SULLIVAN SUPERIOR COURT
The Honorable Robert E. Springer, Judge
Cause No. 77D01-1003-CT-107

**February 14, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Defendant, Charles L. Myers (Myers), appeals the jury verdict awarding Appellee-Plaintiff, Glen L. Williams (Williams), damages in the amount of $130,000 following an automobile accident.

We affirm.

## ISSUES

Myers raises three issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court abused its discretion by instructing the jury on apportionment of damages; and

(2) Whether sufficient evidence was presented to support an apportionment of the damages.

## FACTS AND PROCEDURAL HISTORY

On November 25, 2009, Myers was traveling westbound on Wabash Avenue in Terre Haute, Indiana. Upon turning north onto Brown Avenue, Myers collided with Williams' vehicle. Following the accident, Williams complained of neck pain and headaches and sought initial treatment at the emergency room. He later received care from his family physician.

In 1978 or 1979, prior to the accident, Williams had a neck injury. In 2005, he began treatment with Dr. Timothy Lenardo (Dr. Lenardo), a rheumatologist, for inflammatory arthritis and osteoarthritis in his neck, shoulders, elbows, wrists, hands, and

2

knees. During his exams, Dr. Lenardo found Williams' neck to be normal and supple. In March of 2009, Williams underwent surgery to repair a torn rotator cuff to his right shoulder. Two years after the accident, in July 2011, Williams had surgery to repair his left rotator cuff.

Because of continuing pain after the collision, Williams commenced treatment with nurse practitioner Donna Purviance (Nurse Purviance), at the Pain Management Clinic at UAP Clinic in Terre Haute, Indiana, six months after the automobile accident. He complained of neck pain, headaches, and sleep disturbance due to the pain. Nurse Purviance opined that Williams' neck pain was caused by the accident but that she could not apportion what amount of pain was derived from the pre-existing arthritis condition and what amount was caused by the collision.

In 2011, Williams saw Dr. Julie Shaw (Dr. Shaw), a chiropractor, who treated him for neck, shoulder, and back pain. She determined that Williams' pain originated from an exacerbation of his pre-existing arthritic condition caused by the accident. Dr. Shaw could not apportion what pain, if any, was caused by the pre-existing condition and what pain was caused by the collision.

On March 12, 2010, Williams filed a Complaint, claiming injuries and damages as a result of Myers' negligence in operating his vehicle. Myers admitted fault for the accident but disputed Williams' damages. On March 6 through March 8, 2012, the trial court conducted a jury trial. At trial, Myers did not contest that Williams had incurred injuries as a result of the accident. However, he claimed although the evidence reflects that Williams' initial neck pain, headaches, and physical therapy through February 2010

derived from the collision, Williams' complaints changed in March of 2010. Myers

pointed to Williams' visit with Dr. Lenovo on March 8, 2010 where Williams no longer

discussed the daily neck pain and headaches. As such, Myers contended that the pain

complaints later in 2010 and again in 2011 are the result of Williams' shoulder surgery, a

condition which existed prior to the accident.

At the close of the evidence, the trial court instructed the jury with respect to

Williams' pre-existing condition as follows:

COURT'S FINAL INSTRUCTION NO. 10

> In this case there is evidence that [Williams] had a preexisting
> physical condition in the area of his body he claims was injured in the
> motor vehicle collision. If you find that his preexisting physical condition
> was causing pain or other symptoms before or after the motor vehicle
> collision, you must then attempt to apportion what, if any, pain was caused
> by the preexisting physical condition and what, if any, pain was caused as a
> result of the motor vehicle collision. Where a logical basis can be found to
> apportion that part of Plaintiff's pain which the motor vehicle collision has
> caused and that part of Plaintiff's pain caused by the preexisting condition,
> then Defendant's liability is limited to that portion of the pain, which the
> motor vehicle collision actually caused. However, where no such
> apportionment can be made and any division must be purely arbitrary, then
> Defendant is liable for all of Plaintiff's pain, regardless of the fact that other
> causes may have contributed to it.

(Appellant's App. p. 34).

During a conference with the court discussing the jury instructions, a day earlier,

Myers objected to Instruction No. 10:

> And then Your Honor, the next instruction which quotes Dunn versus
> Caliunte [sic], I do not believe that's an accurate description of the law that
> if you don't know what it is then the Defendant is responsible and that's
> totally against the burden of proof. I mean, if that's the case then why does
> the Plaintiff have the burden of proof? I mean, essentially what it's saying
> is if you can't figure it out then the Defendant's responsible on this pre-

4

existing condition and that's totally contrary to what the preponderance of the evidence and burden of proof is.

\* \* \*

It's just totally – it's not – I believe that is not an accurate reflection of the law. It's just not. It's one case – it's very distinguishable from what this – from what we're talking about.

(Transcript pp. 247-48). After the trial court instructed the jury, Myers objected again,

stating:

> [Myers] objects to Court's Final Instruction Number 10, which is based on the case of Dunn versus Calunte [sic], 516 N.E.2d 52 – 516 N.E.2d 52 (1987). [Meyers] objects to this particular instruction because it's a conflict of several other instructions in this particular case. The instruction is in conflict with Court's Final Instruction Number Three, which is the Issue Instruction, discusses what the Plaintiff's burden of proof is and then what the Defendant's burden of proof is. It also conflicts with Court's Final Instruction Number Four, which again sets forth again what the Plaintiff's burden of proof is and what the Defendant's burden of proof is concerning the November the 25th of 2009 accident. Final Instruction Number Ten is also in conflict with Court's Final Instruction Number Six concerning evidence of greater weight. In this particular situation the instruction assumes that the jury cannot determine pre-existing injuries because any decision would be arbitrary. There has been sufficient evidence through medical records through the UAP Clinic, from Union Hospital and from the deposition testimony of Dr. Lenardo that there can be an apportionment between what of Mr. Williams' complaints are arthritic related and which of his complaints are due to the November 25, 2009 accident and then also includes whether any injuries or problems he may have from shoulder surgeries that have been performed in 2009, 2010, and then again in 2011. So again, the Defendant objects to Court's Final Instruction Number Ten, because it is in conflict with Defendant's burden to prove which means the Court [sic] must prove that the injuries and damages which it is claiming are caused by this accident, which again, is in conflict with the responsible person or the former proximate clause instruction, which is Court's Instruction Number Ten.

(Tr. p. 285).

5

At the close of the evidence, the jury awarded Williams damages in the amount of $130,000.

Myers now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Jury Instruction*

Myers contends that the trial court abused its discretion in instructing the jury at trial. Jury instructions serve to inform the jury of the law applicable to the facts presented at trial, enabling it to comprehend the case sufficiently to arrive at a just and correct verdict. *Blocher v. DeBartolo Properties Management, Inc.*, 760 N.E.2d 229, 235 (Ind. Ct. App. 2001), *trans. denied.* Jury instructions are committed to the sound discretion of the trial court. *Id.* In evaluating the propriety of a given instruction, we consider 1) whether the instruction correctly states the law, 2) whether there is evidence in the record supporting the instruction, and 3) whether the substance of the instruction is covered by other instructions. *Id.* An erroneous instruction warrants reversal only if it could have formed the basis for the jury's verdict. *Id.* Specifically, Myers presents us with a two-fold contention, asserting that Instruction No. 10 (1) is an incorrect statement of the law as it impermissibly shifts the burden of proof to Myers and (2) contradicts Jury Instructions Nos 3, 4, and 6. We will analyze each contention in turn.

A. *Burden of Proof*

First, Myers claims that Jury Instruction No. 10 "invites the jury to ignore the burden of proof and doesn't require Williams to prove his claims." (Appellant's Br. p. 11). Focusing on the Instruction's language that if no apportionment or division can be

6

made between the pain deriving from the vehicle accident and the pain originating from Williams' pre-existing condition, Myers should be held liable for all of Williams' injuries, Myers asserts that this inappropriately encourages the jury to disregard Williams' burden to prove damages by a preponderance of the evidence. In fact, Myers maintains that "Instruction 10 allows the jury . . . [to find] Myers liable for all damages without proof." (Appellant's App. p. 7). As such, Jury Instruction No. 10 is in incorrect statement of the law.

We disagree. In *Dunn v. Cadiente*, 516 N.E.2d 52 (Ind. 1987), *reh'g denied*, our supreme court addressed the impact of evidence of pre-existing conditions on the apportionment of damages in a medical malpractice case. In *Dunn*, the court noted as follows:

> To the extent that there may have been conflicting evidence regarding the extent to which all of Dunn's injuries and losses were causally related to Cadiente's conduct or the congenital anomaly, the question may be viewed as one of apportionment of damages. Upon this issue, Prosser favors the following approach:
>
> > Where a logical basis can be found for some rough practical apportionment, which limits a defendant's liability to that part of the harm which he has in fact caused, it may be expected that the division will be made. Where no such basis can be found and any division must be purely arbitrary, there is no practical course except to hold the defendant for the entire loss, notwithstanding the fact that other causes have contributed to it.
>
> Consistent with a plaintiff's burden to prove causation, we do not view this consideration as transferring to a defendant the burden to prove the existence of a logical basis for apportionment. The burden of proof remains with the plaintiff. In order to benefit from this rule, it is therefore plaintiff's burden to prove the absence of any such basis for apportionment.

7

*Id*. at 56.

We note that the trial court's Jury Instruction No. 10 closely follows the language of our supreme court in *Dunn* and does not impermissibly shift the burden of proof. For this reason, we conclude that the trial court did not abuse its discretion by tendering it to the jury.

### B. *Contradiction with Other Jury Instructions*

Next, Myers claims that Jury Instruction No. 10 contradicts Jury Instructions Nos. 3, 4, and 6.[1] Jury Instructions 3, 4, and 6 were proposed by Myers and referenced the requirement that a claim must be proven by the greater weight of the evidence. In particular, Jury Instruction No. 3 establishes that Williams must prove his claims by the greater weight of the evidence. Instruction No. 4 informs the jury that Williams must prove by the greater weight of the evidence that Myers' negligence caused Williams' injuries. Instruction No. 6 clarifies to the jury that evidence is of greater weight if it convinces the jury that a fact is more probably true than not. Myers now maintains that because Instruction No. 10 allows the jury to hold him liable for all of Williams' injuries if no apportionment can be made or, if made, is purely arbitrary, Jury Instruction No. 10 abolishes the requirement that Williams establishes Myers' liability by a greater weight of the evidence.

Again, we disagree. Jury Instructions Nos. 3, 4, and 6 instruct the jury as to the overall requirements in negligence cases and the plaintiff's burden of proof, while Jury

---

[1] Although Myers also claimed that Jury Instruction No. 10 contradicted Jury Instruction No. 8, we consider that part of his argument waived as he failed to present this claim to the trial court.

Instruction No 10 guides the jury with respect to the requirements of apportionment of Williams' pain, in the event the jury decides that the pre-existing condition caused the pain after the motor vehicle collision. Viewed in this light, we cannot say that the Jury Instructions are contradictory.

## II. *Apportionment of Damages*

Lastly, Myers contends that the evidence presented supports an apportionment of the damages between Williams' pre-existing arthritis and his injuries resulting from the accident. When reviewing a jury's verdict to determine if it is supported by sufficient evidence, this court will neither reweigh the evidence nor judge the credibility of the witnesses. *Don Medow Motors, Inc. v. Grauman*, 446 N.E.2d 651, 653 (Ind. Ct. App. 1983). We will consider only that evidence and reasonable inferences therefrom most favorable to the verdict, and must affirm if the verdict is supported by substantial evidence of probative value. *Id*. As we noted previously, in the event there is conflicting evidence regarding the extent to which all of Williams' pain was causally related to Myers' conduct or his pre-existing arthritis, the question is viewed as one of apportionment. *See Dunn*, 516 N.E.2d at 56. In this respect, Williams had the burden to prove the absence of any basis for apportionment. *See id*.

Myers focuses on the testimony of Nurse Purviance and Dr. Shaw as providing the evidence which would have aided the jury in apportioning Williams' damages. Although both witnesses were aware of Williams' pre-existing arthritis and his two shoulder surgeries, they unequivocally testified that they could not apportion what amount of pain was derived from the pre-existing arthritis and what amount was caused by the collision.

9

Based on this testimony, the jury could reasonably conclude that no basis for apportionment existed and any division would be pure speculation. Therefore, we conclude that the verdict is supported by the evidence.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly instructed the jury on apportionment of damages and sufficient evidence was presented to support an apportionment of the damages.

Affirmed.

BAKER, J. and BARNES, J. concur