## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 31 2015, 10:17 am

*Kevin S. Smith*

CLERK

of the supreme court, court of appeals and tax court

ATTORNEY FOR APPELLANT

Steven P. Polick
Steven P. Polick & Associates, P.C.
Griffith, Indiana

ATTORNEY FOR APPELLEE

David Cerven
Highland, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

SVT, LLC d/b/a ULTRA FOODS,

*Appellant-Defendant,*

v.

Benny Becchino,

*Appellee-Plaintiff*

March 31, 2015

Court of Appeals Case No. 45A03-1407-CT-238

Appeal from the Lake Superior Court Civil Division

The Honorable John R. Pera, Judge

Case No. 45D10-1205-CT-00090

**Vaidik, Chief Judge.**

# Case Summary

[1]     Benny Becchino, who had preexisting shoulder injuries, slipped and fell while shopping at an Ultra Foods grocery store. After the fall, his shoulder pain worsened and ultimately required surgery. The store's third-party administrator

denied Becchino's initial injury claim in part on the ground that the area where he fell had been swept fifteen minutes prior to the fall. Becchino filed suit against SVT, LLC (SVT), and asked in his initial discovery request for all surveillance tapes or any other depiction of Becchino's fall and/or the fall scene on or about the date of the fall. SVT produced surveillance footage beginning approximately fourteen minutes before Becchino's fall, and when Becchino asked for more of the surveillance footage, it had already been automatically recorded over. At trial, Becchino argued and requested a jury instruction on spoliation of the evidence. Becchino also set out to prove and submitted a jury instruction stating that there was no logical basis for apportionment of damages and, as such, SVT was liable for the entire amount. Because we find that there was evidence supporting the spoliation instruction and the apportionment instruction was a correct statement of law, the trial court did not abuse its discretion in issuing these instructions. We affirm.

## Facts and Procedural History

On March 26, 2012, at 11:27 a.m., Benny Becchino was shopping for a few items at SVT's Ultra Foods in Highland, Indiana, when he slipped and fell. After he fell, he noticed that on the floor "there was wet stuff and [] two grapes." Tr. p. 428. He stood up quickly and was approached by seafood manager Janice Witt, who had witnessed Becchino's fall. Witt also saw the grapes on the floor – "one that [was] smashed and one that was whole." *Id.* at

658. Witt called store manager Vince McDonnell, who came to the scene and made a "Customer Injury Report."

[3] In the report, the "Nature and Extent of Injury" is reported as: "LEFT SHOULDER HURTS, L [L is circled] KNEE HURTS." Ex. 23. On the second page of the report, STATEMENT OF INJURED, Becchino filled in his name and the explanation of the incident: "I, Benny Becchino, do hereby offer the following explanation of the above incident. Slipped & fell from grapes on floor." *Id.* Below this, there is a section with the heading WITNESS STATEMENT, which reads as follows: "I, Jan Witt, do hereby offer the following explanation of the above incident. Sa[w] him slip on grapes jumped back up and held his back." *Id.* According to store manager McDonnell, this report then went to the safety manager to make sure that all of the information was filled in, and also to loss prevention "to . . . see if they could find this incident on video and burn the disc for it." Tr. p. 286.

[4] When loss prevention receives a report, they "go back to the camera where the incident happened . . . to see if they can see the event." *Id.* at 277. Loss-prevention people watch the footage and burn to a disc what they think is relevant. Then, because the cameras are on "kind of a loop[,]" every sixty days the digital footage gets copied over. *Id.* Once the footage is recorded over, it cannot be restored.

[5] On the day of Becchino's fall, Kevin Sahm was the utility clerk assigned to sweeping the store floors. The utility clerk assigned to floors is supposed to

respond to clean-up calls promptly as well as sweep the store floors every two hours. As to the regular sweeping of the store, there is a "sweep log" in which the utility clerk records his sweeping activity. *Id*. at 699. Sahm's regular practice was to write in the sweep log that each sweep took fifteen minutes, even when a sweep actually took longer to complete. *Id*. at 700. So, for instance, a typical sweep log might read as follows: 7:00 to 7:15, 9:00 to 9:15, and so forth. On the day of Becchino's fall, March 26, Sahm wrote on the sweep log that he had swept from 11:00 to 11:15 in the morning. Ex. 24.

[6] Before his fall at Ultra Foods, Becchino suffered from long-term pre-existing conditions in his back and shoulders. He had previously had four surgeries on his shoulders (two on each side), the last of which was in 2004. From 2004 to 2012, when the fall occurred, Becchino "always had some pain in there. . . . But he was capable of doing things." Tr. p. 417. He did not receive any treatment on his shoulders—including physical therapy or pain medication—during this time period.

[7] After he finished filling out the customer injury report with McDonnell, Becchino bought a couple of items at Ultra Foods, and then went on to another store afterwards. The next morning, however, Becchino went to the emergency room complaining of shoulder pain, and an x-ray was performed. Becchino then saw a nurse practitioner, who recommended that he see an orthopaedic surgeon, David J. Harris, M.D. Becchino visited Dr. Harris on April 3, and received Cortisone injections behind his shoulders. MRIs revealed "recurrent tears in the rotator cuff tendons. On the left side, he had his acromioclavicular

joint cleaned out." *Id.* at 560. Ultimately, months later, Becchino had surgery performed on his right shoulder followed by physical therapy. *Id.* at 451.

[8] Shortly after the fall, Becchino filed a claim with SVT's third-party administrator, who responded by a letter dated April 11, 2012. This letter reads in relevant part as follows:

> . . . Our investigation confirms you were walking in front of the food promotion area at the end of aisle number 2. You slipped and fell onto the floor after stepping on a grape. The incident did not occur in the produce area. There were only 2 grapes found on the floor. The store did not have any prior notice of loose grapes on the floor in the aisle. A sweep of the floors in the store was completed fifteen minutes prior to your fall. Our obligation is to pay claims where evidence places legal liability on our insured. Therefore, we respectfully deny liability on the part of our insured for this loss.

Ex. 38.

[9] Becchino's attorney filed suit on May 2, 2012, about a month after the slip and fall. In his request for production of documents sent on May 16, Becchino requested "All pictures, videos, surveillance tapes or any other depiction showing the Plaintiff's fall and/or the fall scene on or about March 26, 2012 at Ultra Foods . . . ." *Id.*; Tr. p. 41-43.[1] But the only surveillance footage that was preserved from the day of Becchino's fall begins at 11:13 a.m., fourteen minutes

---

[1] In the transcript, Becchino's counsel tells the trial court, and SVT does not dispute, that the request for production of documents was sent on May 16, 2012. But in the appendix and at Ex. 38, there are identical unsigned copies of this document, with the statement below <u>Certificate of Service</u> reading as follows: "I certify that on June 1, 2012, a true and complete copy of the above and foregoing pleading or paper was made upon each party or attorney of record herein . . . ." Appellant's App. p. 18 (emphasis added); Ex. 38.

before Becchino's 11:27 a.m. fall. Store manager McDonnell had reviewed the surveillance footage for thirty to forty-five minutes before Becchio fell, and had not seen Sahm sweeping in those videos. Tr. p. 399.

[10] On June 21 SVT responded to this specific request for production of documents as follows:

> Attached are copies of four photographs taken at the scene on the date of the Plaintiff's incident. Also submitted with this Response to Request for Production of Documents is a disk containing copies of the videos depicting the Plaintiff on the day of the accident.

Appellant's App. p. 19. On June 27 Becchino's attorney sent a letter stating that he had reviewed portions of the discovery responses, including the surveillance video, and was interested in seeing the video of the area where Becchino fell starting at 10:00 a.m. *Id.* at 22. He also requested video from the "camera in the produce section" from 10:00 a.m. onwards. *Id.* But this surveillance footage was no longer available as this second request was now beyond the 60-day window after which the video was recorded over. Tr. p. 39.

[11] A jury trial was held on March 24 - 26, 2014. At trial, Dr. Harris testified by way of his deposition as to the effect of the fall:

> [Becchino's attorney]: . . . What role, if any, did the fall play in his left shoulder?
>
> [Dr. Harris]: Well, as far as did this – was it the sole cause of his tendon tearing or it worsening? With his current tendon tearing, it's difficult to be exact [] because . . . I didn't have a full image of what things looked like prior. But, certainly, Mr. Becchino's symptoms, according to him, had dramatically progressed.

[Becchino's attorney]:  All right.  So what -- sometimes we say there can be an aggravation of a pre-existing condition.  Are you familiar with that?

[Dr. Harris]:  Absolutely.

* * * * *

[Becchino's attorney]:  Can you apportion the degree of the aggravation due to the fall versus what was there before?

[Dr. Harris]:  I don't think with any medical certainty.

*Id*. at 551-52.

[12]  At trial Becchino testified that from a "functional standpoint," the kinds of things that cause pain now that didn't before he fell include: "Hanging up a coat. Putting stuff in the microwave.  Everyday things.  My fishing.  Just washing your hair.  You know, whenever you move them arms upwards[.]. . ." *Id*. at 455.

[13]  During the jury-instruction conference, counsel for Becchino asked the trial court to issue an instruction on spoliation of the evidence.  Specifically, Becchino's counsel argued that his initial, general request for production of documents—which he intended as a request for "the whole day," *id*. at 752— was sent within the sixty-day window of opportunity before which the surveillance video was recorded over.  The parties disagreed over the correct statement of law on spoliation.  The trial court stated as follows:

> So we've got the claims people saying to the Plaintiff, we swept the area 15 minutes before you fell. . . . [H]owever, then we get to trial and we've got the testimony of the store manager saying, I looked at the video, as of quarter to 11:00 there was nobody sweeping the floor.

Now there's an inference there . . . that between the time this letter was written and at some point thereafter . . . it was discovered that the video didn't support the assertion that the floor had been swept. Which leads to an inference, perhaps, that it was intentionally destroyed as a result of that.

In any event, it's clear that as of the date of the request for production that was sent over to the Defendant . . . and still within that 60 day window when the video was available, the Plaintiff asked for video of March 26th. I think, at that point, the Defendant was on notice that that video should have been preserved for the entire day.

So, I do think that the instruction is warranted. The objection of the Defendant is overruled. And I'll be[] giving it in [the] form of [Model Instruction] 535.[2]

*Id*. at 757-58. Thereafter, the trial court instructed the jury as to spoliation as follows:

If a party fails to produce evidence under the party's exclusive control, you may conclude that the evidence the party could have produced would have been unfavorable to the party's case.

*Id*. at 792.

[14] Becchino's counsel also requested an instruction on apportionment of damages, Plaintiff's Jury Instruction No. 6, which reads as follows:

A pre-existing condition, if aggravated by a defendant's conduct, may result in the defendant's full liability for the resulting injury. If there is no basis for apportionment between the pre-existing condition and the

---

[2] Model Instruction No. 535 reads as follows:

If a party fails to . . . [produce documents] under the party's exclusive . . . [control], you may conclude that the . . . [documents the witness could have produced] would have been unfavorable to the party's case.

Ind. Model Civil Jury Instructions, Instruction No. 535 (Ind. Judges Ass'n 2014).

extent of the aggravation, then the defendant is liable for the entire injury.

Appellee's App. p. 1. SVT put forth Indiana Model Civil Jury Instruction No. 926 (Model Instruction 926), which reads as follows: "Plaintiff, Benny Becchino, is not entitled to recover damages for any physical condition that existed before the incident." *Id.* at 2 (citing Ind. Model Civil Jury Instructions, Instruction No. 926 (Ind. Judges Ass'n 2014)).

[15]     At the instruction conference, as the parties argued over instructions regarding apportionment, the following colloquy occurred:

> The [trial c]ourt: . . . [i]s there a Model [Instruction] . . . with respect to Plaintiff's Number 6?
>
> [Becchino's counsel]: I couldn't find one, your Honor. That's why I drafted this one. . . . I went through this with the doctor. I asked him twice, can you apportion; and he said, no, I can't. And this – that *Dunn* [*v. Cadiente*, 516 N.E.2d 52 (Ind. 1987)] case says [] – it's my burden. And if I meet it and it can't be apportioned, then they eat it all. They're responsible for the entire injury. That's why I went through that exercise with the physician. And they haven't come forth with any proof to dispute that.
>
> The [trial c]ourt: All right.
>
> [SVT's counsel]: My turn? It's directly contrary to the Model Instruction 926. 926 says plaintiff is not entitled to recover damages for any physical condition that existed before the incident. Period. It's contrary to Indiana law. . . . If you look at the committee comments . . . talking about an aggravation of a previous injury . . . I'm quoting: A defendant is ordinarily liable for the aggravation or exacerbation of a pre-existing condition, comma, but not for the condition as it was. [citations omitted]. . . . So, this concept that, well, if the doctor can't say how much was aggravated, we buy the whole enchilada, is just complete nonsense.
>
> [Becchino's counsel]: . . . [T]hat's the law in Indiana, your Honor. . . . [T]he Supreme Court said that in *Ca[d]iente* . . . . I met my burden. I

asked the doctor, can you apportion it. And he said twice in this deposition, no.

\* \* \* \* \*

The [trial c]ourt: I'm giving the instruction. It is supported by the evidence and the principle of law [] as annunciated in *Dunn* [*v. Caliente*].

Tr. p. 764-69.

[16] Before giving final instructions to the jury, the trial court asked the attorneys if there were any objections to the final jury instructions, and SVT's counsel responded, "None other than what we argued previously, Judge." *Id*. at 787.

[17] Ultimately, the trial court instructed the jury on apportionment as follows:

Generally, a plaintiff is not entitled to recover damages for any physical condition that existed before the accident. However, a preexisting condition, if aggravated by a defendant's conduct, may result in the defendant's full liability for the resulting injury. If there is no basis for apportionment between the pre-existing condition and the extent of the aggravation, then the defendant is liable for the entire injury.

*Id*. at 798. Thus, the trial court combined the two instructions – Plaintiff's Jury Instruction No. 6 and Defendant's Jury Instruction No. 4 (or Model Instruction 926).

[18] Following the trial, on March 26 the jury returned a verdict in favor of Becchino, in the amount of $350,000 plus costs. On April 21, 2014, SVT filed a motion to correct error, arguing that the judgment was excessive and was a result of erroneous jury instructions. Appellant's App. p. 31. The trial court denied the motion to correct error.

SVT now appeals.

# Discussion and Decision

In reviewing a trial court's decision to give or refuse a tendered jury instruction, this Court considers whether the instruction (1) correctly states the law, (2) is supported by evidence in the trial record, and (3) is covered in substance by other instructions. *Gary Cmty. Sch. Corp. v. Lardydell*, 8 N.E.3d 241, 246 (Ind. Ct. App. 2014). The trial court has discretion in instructing the jury and will be reversed on the last two points only when the instructions amount to an abuse of discretion. *Id.* To constitute an abuse of discretion, the instructions given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. *O'Connell v. State*, 970 N.E.2d 168, 172 (Ind. Ct. App. 2012). As to the question of whether the instruction is supported by the evidence, we note that the quantum of evidence necessary for the giving of an instruction is deliberately set at a relatively low level in order to assure the right of parties to have the trier of fact determine factual disputes and to preserve the constitutional right to trial by jury. *Upham v. Morgan Cnty. Hosp.*, 986 N.E.2d 834, 838 (Ind. Ct. App. 2013), *reh'g denied*. Furthermore, under the abuse-of-discretion standard, we "view the evidence in a light most favorable to the decision" of the trial court. *Musgrave v. Aluminum Co. of Am.*, 995 N.E.2d 621, 638 (Ind. Ct. App. 2013) (quoting *Short v. State*, 962 N.E.2d 146, 148 (Ind. Ct. App. 2012)).

# I. Spoliation Instruction

[21] SVT argues first that the trial court abused its discretion in giving Indiana Model Civil Jury Instruction 535 on spoliation to the jury because there was no evidence that SVT intended to destroy or otherwise suppress evidence. *See* Appellant's Br. p. 14. "Spoliation" is defined as "[t]he intentional destruction, mutilation, alteration, or concealment of evidence . . . ." *Black's Law Dictionary* 1620 (10th ed. 2014). In Indiana, the exclusive possession of facts or evidence by a party, coupled with the suppression of the facts or evidence by that party, may result in an inference that the production of the evidence would be against the interest of the party that suppresses it. *Porter v. Irvin's Interstate Brick & Block Co., Inc.*, 691 N.E.2d 1363, 1364-65 (Ind. Ct. App. 1998) (citing *Westervelt v. Nat'l Mfg Co.*, 33 Ind. App. 18, 69 N.E. 169, 172 (1903)). "While this rule will not be carried to the extent of relieving a party of the burden of proving his case, it may be considered as a circumstance in drawing reasonable inferences from the facts established." *Id*. at 1365 (quoting *Great Am. Tea Co. v. Van Buren*, 218 Ind. 462, 33 N.E.2d 580, 581 (1941)). The rule not only applies when a party actively endeavors to prevent disclosure of facts, but also when the party "merely fails to produce available evidence." *Id*. (quoting *Morris v. Buchanan*, 220 Ind. 510, 44 N.E.2d 166, 169 (1942)). These spoliation cases are directed to a party which has suppressed evidence believed to be in its control at the time of the lawsuit; however, this Court wrote, "we see no reason why they should not be applied where the party spoliates evidence prior to the commencement of a law suit that the party knew or should have known was imminent." *Id*.

In this case, the trial court gave the following spoliation instruction to the jury:

> If a party fails to produce evidence under the party's exclusive control, you may conclude that the evidence the party could have produced would have been unfavorable to the party's case.

Tr. p. 792. On appeal, SVT does not dispute that that the instruction is a correct statement of law; instead, SVT argues that the trial court abused its discretion in giving the spoliation instruction because there is no evidence that SVT "actively endeavor[ed] to prevent disclosure of facts." Appellant's Br. p. 12. SVT continues:

> [T]he Indiana spoliation model instruction requires that the missing evidence be in the exclusive control of the party and that the party failed to turn it over in response to specific written discovery. The finder of fact can only determine the second element of spoliation, culpability, after determining which materials a party was asked to produce, whether they were in it exclusive possession, and[] when the request was made.

*Id*. at 18. Here, SVT maintains that Becchino's original discovery request for "All pictures, videos, surveillance tapes or any other depiction showing the Plaintiff's fall and/or the fall scene on or about March 26, 2012 at Ultra Foods . . . ." was not specific enough to warrant the inference that SVT's failure to produce video footage from earlier than fourteen minutes before Becchino's fall rose to the level of spoliation. Appellant's App. p. 16. Becchino contends, however, that SVT's initial denial of Becchino's claim on the ground that the area had been swept fifteen minutes before the fall *coupled with* the failure to produce and preserve footage from earlier than fourteen minutes before the fall adequately supports the giving of the spoliation instruction. We agree.

Becchino's fall occurred on March 26, 2012. In a letter dated April 11, SVT's third-party administrator denied liability, in part on the ground that "A sweep of the floors in the store was completed fifteen minutes prior to your fall." *See* Ex. 38. Becchino filed his complaint on May 2, and his initial request for production of documents was on May 16 – within the sixty-day window before the store's surveillance footage is recorded over. In this initial discovery request, he asked for "*All* pictures, videos, surveillance tapes or any other depiction showing the Plaintiff's fall *and/or* the fall scene on or about March 26, 2012 at Ultra Foods . . . ." Ex. 38 (emphasis added). Furthermore, as argued by Becchino:

> Vince McDonnell, the store's manager, . . . knew that the sweep log for the day of the fall completed by Kevin Sahm was not accurate. He even looked at the video, as did loss prevention, well before the sixty (60) day loop period knowing Sahm's sweep times were inaccurate, knowing a sweep of the area was important to the defense of a claim, yet SVT failed to preserve the only evidence that would have shown if and when the area where Becchino fell was last swept.

Appellee's Br. p. 19 (internal citations omitted).

SVT concedes in its reply brief that the level of culpability "can range from negligent conduct to intentional destruction." Appellant's Reply Br. p. 3. The quantum of evidence necessary for the giving of an instruction is deliberately set at a relatively low level in order to assure the right of parties to have the trier of fact determine factual disputes and to preserve the constitutional right to trial by jury. *See Upham*, 986 N.E.2d at 838. Here, viewing the evidence in the light most favorable to the trial court's decision, we find that there was ample

evidence that SVT was at least negligent in failing to preserve surveillance footage of the day of Becchino's fall. *See Musgrave*, 995 N.E.2d at 638. Thus the trial court did not abuse its discretion in issuing the spoliation jury instruction.

## II. Apportionment Instruction

Next SVT contends that the jury instruction on apportionment was not a complete or correct statement of Indiana law. The trial court has broad discretion as to how to instruct the jury, and we generally review that discretion only for abuse. *Id.* at 637. Where, however, as here, the appellant's challenge to the instruction is that the instruction was an incorrect statement of law, we review the trial court's interpretation of that law de novo. *Id.* (quotation omitted).

When the attorneys argued over the apportionment instructions at the instruction conference, Becchino's attorney tendered "Plaintiff's Jury Instruction No. 6," an instruction based on the *Dunn* case, which relies on Prosser's approach:

> Where a logical basis can be found for some rough practical apportionment, which limits a defendant's liability to that part of the harm which he has in fact caused, it may be expected that the division will be made. Where no such basis can be found and any division must be purely arbitrary, there is no practical course except to hold the defendant for the entire loss, notwithstanding the fact that other causes have contributed to it.

*Dunn*, 516 N.E.2d at 56 (quoting William Prosser, *Torts*, at 314 (4th ed. 1971).

Becchino's specific proposed instruction read as follows:

> A pre-existing condition, if aggravated by a defendant's conduct, may result in the defendant's full liability for the resulting injury. If there is no basis for apportionment between the pre-existing condition and the extent of the aggravation, then the defendant is liable for the entire injury.

Appellee's App. p. 1.

SVT, on the other hand, submitted "Defendant's Jury Instruction No. 4"—based on Model Instruction No. 926—which reads as follows: "Plaintiff, Benny Becchino, is not entitled to recover damages for any physical condition that existed before the accident." *Id*. at 2. SVT's counsel also argued that Becchino's apportionment instruction was "directly contrary to the Model Instruction 926." Tr. p. 765. SVT continued:

> 926 says plaintiff is not entitled to recover damages for any physical condition that existed before the incident. Period. It's contrary to Indiana law. It's contrary to the Model Instruction, which, of course, your Honor knows, we all know is, you know, the most well-settled aspect of Indiana law once it make it's [sic] way to a jury instruction.

*Id*. at 766.

Ultimately the trial court announced that it would issue the following jury instruction on apportionment:

> Generally, a plaintiff is not entitled to recover damages for any physical condition that existed before the accident. However, a pre-existing condition, if aggravated by a defendant's conduct, may result in the defendant's full liability for the resulting injury. If there is no basis for apportionment between the pre-existing condition and the extent of the aggravation, then the defendant is liable for the entire injury.

*Id.* at 798. Thus, the trial court had combined both parties' apportionment instructions – Plaintiff's Jury Instruction No. 6 and Defendant's Jury Instruction No. 4 (or Model Instruction 926). After tendering the final instruction to the parties, the trial court asked if there were any objections. SVT responded, "None other than what we argued previously, Judge." *Id.* at 787.

[29] On appeal, SVT contends that "there *was* testimony that a logical basis for a 'rough practical apportionment' existed." Appellant's App. p. 25 (emphasis added). Specifically, SVT cites to the following—the "most crucial piece of testimony given by Dr. Harris," Appellant's Br. p. 25—from Dr. Harris's cross examination:

> [SVT's counsel]: . . . [B]ut you can't really say how much of an aggravation was generated by the fall at the grocery store?
>
> [Dr. Harris]: Well, the way I [] would probably choose to look at this would be that it was enough to cause a man who had been dealing with pain for eight years to decide to have another operation.

Tr. p. 612-13. Contrary to SVT's assertion, this testimony simply does not provide a "logical basis" for some "rough practical apportionment." *See Dunn*, 516 N.E.2d at 56. In other words, Dr. Harris does not provide, in this excerpt of his testimony or any other, a concrete, definitive answer—in terms of percentages, monetary value or some other form of valuation—as to how much of Becchino's injury was due to his pre-existing condition and how much was exacerbated by the fall at Ultra Foods.

[30] We find that the rule of law is clear on this point, and is consistently spelled out even in the cases relied upon by SVT.[3] *See, e.g., Robertson v. B.O.*, 977 N.E.2d 341, 346 (Ind. 2012) ("A pre-existing condition or susceptibility, if aggravated by a defendant's conduct, may result in a defendant's full liability for the resulting injury and loss. However, if the pre-existing condition, standing alone, independently causes injury and loss, a defendant will not be liable for such damages.") (quoting *Dunn*, 516 N.E.2d at 56). The trial court's apportionment instruction was a correct statement of the law. Thus we cannot say the trial court abused its discretion in giving either of the challenged jury instructions.

Affirmed.

Baker, J., and Riley, J., concur.

---

[3] We note that SVT relies in part on an unpublished memorandum opinion in support of its argument. This is contrary to Indiana Appellate Rule 65, which provides: "[A] memorandum decision shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish *res judicata*, collateral estoppel, or law of the case." *See* Ind. App. R. 65(D). A court-rule violation of this nature significantly undermines our confidence in counsel's credibility.