# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**KAREN A. NEISWINGER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

Attorneys for Richard J. Eisenhut, M.D.
and Unity Physicians
**EDNA M. KOCH**
**JOSEPH D. McPIKE, II**
**JENNIFER A. PADGETT**
Indianapolis, Indiana

Attorney for Morgan County Hospital
**ROBERT G. ZEIGLER**
Indianapolis, Indiana

Attorneys for Kendrick Family Practice and
Donald Baird, D.O.
**PETER H. POGUE**
**DAVID G. FIELD**
**BRANDON M. KIMURA**
Indianapolis, Indiana

FILED

Mar 25 2013, 8:21 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARIA UPHAM, as Surviving Spouse and Personal Representative of the Estate of Wilbur A. Upham, Deceased, | ) ) ) ) | |
| Appellant-Plaintiff, | ) ) | |
| vs. | ) ) | No. 55A01-1202-CT-53 |
| MORGAN COUNTY HOSPITAL, RICHARD J. EISENHUT, M.D., UNITY PHYSICIANS, KENDRICK FAMILY PRACTICE and DONALD BAIRD, D.O., | ) ) ) ) ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MORGAN SUPERIOR COURT
The Honorable Brian Williams, Special Judge
Cause No. 55D01-0211-CT-605

OPINION - FOR PUBLICATION

**MAY, Judge**

Maria Upham brought an action against Morgan County Hospital and certain physicians (collectively, "the Hospital") for the wrongful death of her husband, Wilbur Upham. A jury found for the Hospital. On appeal, Upham argues the trial court should have granted a mistrial because of remarks a prospective juror made during *voir dire*, should not have given the jury two instructions, and should not have denied certain discovery requests. We affirm.

**FACTS AND PROCEDURAL HISTORY**

Wilbur Upham went to the Morgan County Hospital emergency room early in the morning of April 16, 1997, complaining of vomiting, abdominal pain, diarrhea and chills. He was seen by Dr. Richard Eisenhut and was discharged with a diagnosis of acute gastroenteritis. Later that day Wilbur went to Kendrick Family Physicians, indicating his back hurt and he had stomach pains. He provided a listing of his blood pressure readings. Dr. Donald Baird noted Wilbur's abdominal pain and right hip pain, but did not indicate a diagnosis. He provided osteopathic manipulation and gave Wilbur two prescriptions. At about 10:00 that evening, Wilbur was found dead in a chair. The cause of death was ruptured abdominal aortic aneurism. Upham brought a wrongful death action after a medical review panel rendered an opinion that the evidence supported a conclusion the Hospital met the applicable standard of care.

Via interrogatories during discovery, Upham asked Dr. Eisenhut whether he had been treated or counseled for substance abuse, whether he had emotional, personal, psychiatric or family problems, or whether he had a criminal record. The Doctor objected on various grounds and Upham brought a motion to compel. The Doctor provided the trial court an exhibit for *in camera* review. After review, the trial court denied the motion to compel in May 2003. Upham brought subsequent motions to compel, which were also denied. In 2006, the Doctor filed a pretrial motion *in limine*, which the trial court granted.

Before a jury was empaneled, the trial court asked the venire whether anyone was familiar with any of the parties or witnesses. One venireperson, Juror 35,[1] responded he was a friend of Dr. Eisenhut. He had been an attorney and was retired from Eli Lilly. In a lengthy exchange with Upham's counsel in the presence of the venire, Juror 35 expressed his belief that "medical malpractice suits are what's driven than [sic] the cost of healthcare up in our society," (App. at 273), that malpractice suits are "the goose that laid the golden egg for trial attorneys and specifically plaintiff attorneys," (*id*.), and different standards have been established for "people who are trying to save lives on a daily basis." (*Id*.) Upham's counsel asked Juror 35 whether he had "facts about malpractice suits driving the cost of healthcare," (*id*. at 274), and he opined that plaintiffs find attorneys who think they can "make a few bucks off this deal . . . and hire people like [Upham's counsel] to go to court, take up

---

[1] The venireperson is referred to in the record as "Juror 35," but a jury had not been selected, and he was dismissed for cause after *voir dire*.

3

everyody's time and . . . make some money." (*Id*.) Upham's counsel continued to engage Juror 35, asking whether he believed she was "taking this case just because I want an attorney's figure that I apparently don't believe in the justice of that." (*Id*. at 274-75.) Juror 35 replied "I suspect you're getting one-third of any . . . any judgment, so yes." (*Id*. at 275.) Counsel then turned her attention to other prospective jurors. Upham's counsel did not ask for an admonition and the trial court did not admonish the prospective jurors regarding Juror 35's statements.

Two jury instructions were given over Upham's objection. One instructed the jury about a physician's discretion to select from a variety of accepted treatment methods. Upham objected on the ground the instruction did not apply to the facts of the case because the case was about failure to diagnose and did not involve a choice of treatment modalities. The other instructed the jury that filing a lawsuit did not, by itself, entitle Upham to recover anything and that Wilbur's death during his treatment "carries with it no presumption of negligence" by the defendants. (*Id*. at 66.) Upham objected on the ground the instruction was argumentative, unnecessary, and covered by other instructions.

After a jury trial in October 2011, a verdict was returned for the Hospital. Upham's motion to correct error was denied. She then brought a motion before this court to release the sealed transcript from the 2003 discovery hearing and any exhibits considered during the trial court's *in camera* review. After our own review, we denied the motion.

4

## DISCUSSION AND DECISION

1.  Juror Misconduct

As noted above, during *voir dire* Juror 35 expressed his belief that medical malpractice suits have increased the cost of healthcare, that they are "the goose that laid the golden egg for . . . plaintiff attorneys," (*id*. at 273), and that different standards have been established for "people who are trying to save lives on a daily basis." (*Id*.)

Upham's counsel asked Juror 35 whether he had facts to support his beliefs and he opined that plaintiffs find attorneys who think they can "make a few bucks off this deal . . . and hire people like [Upham's counsel] to go to court . . . and . . . make some money." (*Id*. at 274) Upham's counsel continued to engage Juror 35, asking whether he believed she was taking this case just to make money and didn't believe in the justice of her client's position. Juror 35 replied, "I suspect you're getting one-third of any . . . any judgment, so yes." (*Id*. at 275.) Only then did Counsel turn her attention to other prospective jurors. Upham's counsel did not ask the trial court to admonish the prospective jurors regarding the statements. After Upham's counsel spoke with some other prospective jurors, Juror 35 was excused and Upham moved for a mistrial based on his statements. The trial court denied the motion, saying Upham's "counsel invited much of that." (*Id*. at 280.)

Assuming *arguendo* that a motion for mistrial may be brought even though no trial has commenced,[2] and that juror misconduct may be committed by someone who is not yet a juror, we hold Upham has waived her allegation of error for appeal because she did not ask the trial court to admonish the venire.[3] *See Miller v. Ryan*, 706 N.E.2d 244, 253 (Ind. Ct. App. 1999) (error waived when counsel does not ask court to admonish the jury after denial of a motion for mistrial), *trans. denied. And see Bardonner v. State*, 587 N.E.2d 1353, 1357 (Ind. Ct. App. 1992) (following denial of the mistrial, defense counsel did not ask the court to admonish jury, which is a waiver of any claim of error resulting from the failure to admonish the jury), *trans. denied*.

2.      Jury Instruction on Treatment Modalities

Instructing the jury is a matter assigned to the sound discretion of the trial court, and we review such decisions only for abuse of discretion. *Hubbard v. State*, 742 N.E.2d 919, 921 (Ind. 2001), *cert. denied* 542 U.S. 869 (2001). An improper instruction will merit reversal only if it so affects the entire charge that the jury is misled as to the law in the case. *Id*. In reviewing a challenge to a jury instruction, we consider whether the instruction correctly states the law, whether there was evidence in the record to support giving the instruction, and whether the substance of the tendered instruction is covered by other

---

[2] In *Bardonner v. State*, 587 N.E.2d 1353, 1357 n.4 (Ind. Ct. App. 1992), *trans. denied*, we observed defense counsel's "motion for a mistrial at the beginning of trial was not the proper motion. *Voir dire* is not a part of the trial; the trial does not begin until the jury is impaneled and the cause is submitted." The motion should have been a motion to strike or discharge the jury panel or challenge the array. *Id*.

[3] As we hold the argument was waived for appeal, we need not address whether Upham invited any trial court error by her continued questioning.

6

instructions.  *Id.*

Upham argues the trial court's instruction as to a health care provider's choice of treatment methods should not have been given because it was not supported by the evidence; the issue, she argues, was not whether the doctors properly *treated* Wilbur, but whether their *failure to diagnose* his condition was below the standard of care.[4]

The trial court gave pattern jury instruction 1525, "Choice of Treatment Modalities":

Health care providers are allowed broad discretion in selecting treatment methods, and are not limited to those most generally used.

When more than one accepted method of treatment is available, the health care provider must use sound judgment in choosing which method to use.

If a health care provider uses sound judgment in selecting from a variety of accepted treatments, and uses reasonable care and skill in treating a patient, then the health care provider is not responsible if the treatment does not succeed.

The fact that other methods existed or that another health care provider would have used a different treatment does not establish medical negligence.

(App. at 548.)

We cannot find an abuse of discretion, as there was some evidence in the record that addressed treatment.  The quantum of evidence necessary for the giving of an instruction is deliberately set at a relatively low level in order to assure the right of parties to have the trier

---

[4] In its brief, the Hospital asserts Upham presented expert testimony by Dr. David Gregory that "had [the Hospital] taken a more aggressive *treatment* approach," it would have complied with the standard of care. (Joint Br. of Appellees, Morgan County Hospital, Richard J. Eisenhut, M.D., Unity Physicians, Kendrick Family Practice and Donald Baird, D.O. (hereinafter Hospital Br.) at 20) (emphasis added).  That statement mischaracterizes the testimony.  There is no reference to "treatment" on the pages of the record to which the Hospital directs us.  The witness testified that in light of Wilbur's symptoms, the Hospital should have pursued certain tests.  He concluded "I think a *delay in diagnosis* prevented him from successful surgery," (App. at 319), which surgery would have an "eighty percent survival rate."  (*Id.*)

of fact determine factual disputes and to preserve the constitutional right to trial by jury. *Aldana v. Sch. City of E. Chicago*, 769 N.E.2d 1201, 1206 (Ind. Ct. App. 2002), *trans. denied*. Upham appears correct that there was never an accurate diagnosis of Wilbur's condition, but there was evidence before the jury about treatment of Wilbur's symptoms. The Hospital's evidence concerning treatment was minimal, but it satisfied that standard and permitted an instruction about alternative treatment modalities.

One doctor testified he would not have treated Wilbur's elevated blood pressure with medication, but instead would have followed a "stepped care approach to the management of hypertension in individuals like this." (App. at 508.) That doctor testified scheduling a follow-up visit for Wilbur's back pain was appropriate because his history of back problems and his "doing quite a bit of work that required going up and down ladders," (*id*. at 511), might have accounted for his back pain on his first visit. Wilbur reported his back pain had improved after the first visit due to osteopathic manipulation therapy, so it was reasonable for Dr. Baird to repeat that therapy on a follow-up visit. The witness opined Dr. Baird "adequately addressed Mr. Upham's abdominal symptoms" by palpating Wilbur's abdomen, asking questions, and reviewing Wilbur's past history. (*Id*. at 513.) Finally, there was testimony the numbness Wilbur reported was "so nonspecific that no further follow up would be indicated unless over a much longer period of time this continued to be a problem." (*Id*. at 538.)

We cannot say the instruction on alternative treatment modalities was unsupported by the evidence, and the trial court was within its discretion to give the instruction.

### 3. Jury Instruction on Presumptions

The trial court instructed Upham's jury that Upham had claimed the defendants did not meet the applicable standard of care when treating Wilbur, but:

> The fact that [Upham] has sued the defendants, however, does not entitle [Upham] to recover anything. Anyone may commence an action in court, and one who is sued may defend. You cannot presume that any party is to prevail over any other. The fact that [Upham] has asked for damages may not be taken by you as evidence that she is entitled to any damages at all, and the fact that the Court summarizes [Upham's] Complaint for you or reads instructions in reference to the amount of damages claimed by [Upham] must not be taken by you as a suggestion from the Court that [Upham] is entitled to recover anything.

(App. at 545-46.) The instruction also noted no presumption of negligence arises from the fact Wilbur died following his treatment.

We addressed a similar instruction in *Lewis v. Davis*, 410 N.E.2d 1363 (Ind. Ct. App. 1980). The trial court instructed the jury:

> In this case there are two issues -- that of liability and damages. The fact that the Court has instructed you on the measure of damages in this case does not mean that the Court believes that the Plaintiff is entitled to recover from the Defendant herein. These instructions on the measure of damages are given to assist you only in the event you should find liability on the part of Dr. Davis to the Plaintiff, James Lewis. These instructions on the issue of damages should only be considered by you if you determine under the instructions of the Court by a fair preponderance of the evidence, that the Plaintiff is entitled to recover against the Defendant, Dr. Davis.

*Id*. at 1369.

Lewis argued the instruction was slanted and biased because it indicated the court believed the verdict should be for the defendant. We found the instruction "neutral in tone and the court did not commit error by giving it to the jury." *Id*. The same is true of the

9

instruction in the case before us. We decline to characterize as "argumentative," (Upham Br. at 32), an instruction that notes "[a]yone may commence an action in court, and one who is sued may defend," and tells the jurors they "cannot presume that any party is to prevail over any other" (App. at 546). It was not an abuse of discretion to so instruct the jury.

    4.    <u>Discovery Limitation</u>

A trial court has broad discretion to rule on issues of discovery, and we will interfere only when the appealing party can show an abuse of that discretion. *Allstate Ins. Co. v. Scroghan*, 851 N.E.2d 317, 321-22 (Ind. Ct. App. 2006), *reh'g denied*. A ruling will be reversed only when the trial court reached a conclusion against the logic and natural inferences to be drawn from the facts and circumstances before the court. *Id.* On review, we determine whether the evidence serves as a rational basis for the trial court's decision but may not reweigh the evidence or assess the credibility of witnesses. *Id.* Because the scope of discovery is highly dependent on the facts of each case, the fact-sensitive nature of discovery issues requires a high degree of deference to the decision of the trial court. *Andreatta v. Hunley*, 714 N.E.2d 1154, 1159 (Ind. Ct. App. 1999), *trans. denied*.

Upham asked Dr. Eisenhut in interrogatories whether he had been treated or counseled for substance abuse, whether he had emotional, personal, psychiatric or family problems, or whether he had a criminal record. The Doctor objected on various grounds and Upham brought a motion to compel. The Doctor provided the trial court an exhibit for *in camera* review. After review, the trial court denied the motion to compel in May 2003. Upham brought subsequent motions to compel, which were also denied.

In 2006, Dr. Eisenhut filed a pretrial motion *in limine*, which the trial court granted. After a jury trial in October 2011, a verdict was returned for the defendants. Upham's motion to correct error was denied. She then brought a motion before this court to release the sealed transcript from the 2003 discovery hearing and any exhibits considered during the trial court's in *camera review*. After our own review, we denied the motion.[5]

As the information Dr. Eisenhut provided has been thoroughly reviewed by the trial court and this court, we decline to revisit our decision that release of the information could compromise the Appellees' legitimate interests in non-disclosure of privileged or confidential information and that the information would be unlikely to support the issues Upham asserted in her motion to release the information. (*See* App. at 48-49).

## CONCLUSION

Upham's allegation of juror misconduct is not available to her on appeal, the trial court did not abuse its discretion in instructing the jury, and the trial court's discovery rulings were not an abuse of discretion. We accordingly affirm.

---

[5] We acknowledge Upham's understandable frustration that this process has left her without "the facts to intelligently argue why the trial court's orders denying discovery are erroneous," (Upham Br. at 34), and that she "cannot determine whether the information provided [at the *ex parte* hearing] was complete nor sufficient" for the trial court and this court to rule that the evidence would be unlikely to support or be relevant to the issues Upham asserted in her motion to release the information.

As Upham was denied access to that evidence, we decline the Appellees' invitation to hold she has waived this allegation of error because she "made no attempt to make an offer of proof on this issue at the trial." (Hospital Br. at 33.) The purpose of an offer to prove is to preserve for appeal the trial court's allegedly erroneous exclusion of evidence. *Duso v. State*, 866 N.E.2d 321, 324 (Ind. Ct. App. 2007). An offer of proof consists of three parts: (1) the substance of the evidence, (2) an explanation of its relevance, and (3) the proposed grounds for its admissibility. *Id*. As a result of the Appellees' successful efforts, Upham was unable to learn the "substance of the evidence." We therefore will not require her to make an offer to prove in order to preserve that issue for appeal.

Affirmed.

NAJAM, J., and KIRSCH, J., concur.