Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT:

**MICHAEL J. ALERDING**
**SCOTT A. KREIDER**
**STEFAN A. KIRK**
Alerding Castor Hewitt, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DANIEL A. MEDREA**
Lucas, Holcomb & Medrea
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PAUL FLETCHER | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1306-PL-211 |
| | ) | |
| NATIONAL FINANCIAL SERVICES | ) | |
| d/b/a FIDELITY INVESTMENTS and | ) | |
| MARK ZUPAN, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Kavadias Schneider, Judge
Cause No. 45D11-0902-PL-24

**February 4, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Paul Fletcher ("Fletcher") filed an action in Lake Superior Court against Mark Zupan ("Zupan") alleging that Fletcher was the rightful beneficiary to certain retirement accounts that had been owned by Scott Taylor ("Taylor") and that Zupan had forged documents to change the designated beneficiary of these accounts to Zupan. The trial court granted summary judgment in favor of Zupan. Fletcher appeals and presents three issues for our review, which we restate as:

I. Whether the trial court erred in considering the issue of who is the rightful beneficiary of Taylor's 401(k) account, when Fletcher did not include this account in his complaint;

II. Whether the trial court erred in concluding that there was no genuine issue of material fact with regard to Fletcher's claims against Zupan; and

III. Whether the trial court abused its discretion when it closed discovery.

We affirm in part, reverse in part, and remand.

**Facts and Procedural History**

Taylor, who lived in Crown Point, Indiana was lifelong friends with Fletcher. In 1998, Taylor named Fletcher as the designated beneficiary on three of Taylor's retirement accounts that Taylor kept with National Financial Services d/b/a Fidelity Investments ("Fidelity"). Taylor was also a lifelong friend with Zupan, but Zupan lived in North Carolina and had less frequent contact with Taylor than did Fletcher.

In the fall of 2001, Taylor was diagnosed with terminal lymphoma. As his condition worsened, it became clear that Taylor would require hospice care. Therefore, on July 25, 2008, Taylor was transported to his parents' home in Arkansas, where he could be cared for by his mother, a registered nurse. Taylor remained with his parents until his death on September 23, 2008.

Prior to his death, however, Taylor relied upon others for assistance with his health and personal affairs. Specifically, Taylor relied upon his financial advisor, Wayne Golomb ("Golomb"), and Fidelity to manage his retirement accounts, and Taylor relied upon Zupan for help with his personal affairs. Shortly after he was transported to Arkansas, Taylor spoke with a Fidelity representative regarding giving more power to Golomb to manage Taylor's Fidelity accounts. Fidelity then sent an authorization form to Taylor via overnight delivery. At about the same time, Zupan began to telephone Golomb to obtain forms to change the beneficiary of Taylor's retirement accounts. Zupan claims that Taylor asked him to contact Golomb and ask him to contact Fidelity and them to contact Taylor directly. Taylor never asked Zupan directly to contact Fidelity.

On August 1, 2008, Fidelity employee Kimberly Rice ("Rice") called Taylor. Rice had dealt with Taylor before and recognized his voice. Rice also believed she was speaking with Taylor because, when she called Taylor's parents' number, one of his parents answered the telephone; when she asked to speak with Taylor, the parent had Taylor come to the telephone. The person who answered the phone confirmed that he was Taylor. Fletcher notes, however, that Rice had never met Taylor in person and that Taylor's account was one of over 1,500 that Rice worked with, which Fletcher claims makes Rice's identification suspect. At Taylor's direction, Rice filled out the change-of-beneficiary forms for Taylor and sent them to his parent's home via overnight delivery. Zupan also called Fidelity several times on August 1, 2008, claiming that it was to update Taylor's address to his parents' home in Arkansas, but Fidelity denies that its

3

representatives spoke with Zupan. Fidelity claimed that it sent the change-of-beneficiary forms to Taylor in Arkansas, but its computer system indicates that it sent the forms to Taylor's residence in Indiana. Taylor's mother recalled only receiving one packet from Fidelity at her home in Arkansas, which Fletcher claims must have been the form authorizing Golomb to exercise more authority over Taylor's accounts as opposed to the change-of-beneficiary form, which Fletcher claims was sent to Taylor's former address in Crown Point, Indiana. Fletcher also notes that Zupan admitted that he travelled to Crown Point, where he would have had the opportunity to obtain the change-of-beneficiary forms.

Rice received Fidelity change-of-beneficiary forms which bore a signature that appeared to be Taylor's, although there were some differences between the signatures on the forms and Taylor's prior signatures. As a result, Fidelity changed the beneficiary on two of Taylor's three accounts from Fletcher to Zupan. With regard to the 401(k) account, however, the beneficiary remained Fletcher. Fletcher now claims that this was because the wrong form was used to change the beneficiary, but Fidelity indicated that it was unsure as to why the beneficiary on this account was not changed.

On February 24, 2009, Fletcher filed a complaint against Zupan and Fidelity, although Fidelity was later dismissed as a defendant. Fletcher sought a ruling that he was the rightful beneficiary of the two accounts that now listed Zupan as the beneficiary. Fletcher did not make any claim with regard to the 401(k) account, which still listed Fletcher as the beneficiary. Zupan filed his answer on September 25, 2009, but his answer did not assert any counterclaims against Fletcher vis-à-vis the 401(k) account.

4

Subsequently, on January 6, 2010, Fidelity[1] filed a motion to intervene, which the trial court granted; Fidelity then filed a complaint for interpleader, seeking to interplead the 401(k) account and dismiss Fidelity as a party. The trial court granted the interpleader.

Although the parties continued discovery, no action was taken on the docket for over sixty days, and the trial court therefore issued an order on April 1, 2011, to show cause why the case should not be dismissed pursuant to Indiana Trial Rule 41(E). The court also scheduled a hearing on the matter for May 31, 2011. Fletcher then filed a request for a case management conference on May 16, 2011. Fletcher erroneously assumed that this would "alleviate the need for a hearing." Appellant's Br. p. 3. But when the trial court held its hearing on May 31, 2011, the parties did not appear, and the trial court dismissed the case pursuant to Trial Rule 41(E). All of the parties subsequently moved to reinstate the action. Specifically, Fidelity filed a motion on July 21, 2011, seeking to intervene and reinstate the action, which Zupan joined. Fletcher then filed a motion for relief from judgment pursuant to Trial Rule 60(B). The trial court conducted a hearing on these motions on October 26, 2011, at the conclusion of which the trial court entered an order vacating its earlier dismissal and reinstating the case. Then, on February 27, 2012, the trial court issued a case management order which ordered all discovery to be completed by August 31, 2012, and set a trial date of October 23, 2012.

On April 27, 2012, Zupan filed a counterclaim against Fletcher seeking a ruling that he was entitled to all of the accounts, including the 401(k) account that had not been

---

[1] Technically, the party that filed the motion to intervene was Fidelity Brokerage Service, LLC, an apparent affiliate of National Financial Services d/b/a Fidelity Investments.
[2] Fletcher subsequently filed a motion to clarify and certify the order for interlocutory appeal, which the

claimed by Fletcher in his complaint. Fletcher then filed an objection to Zupan's counterclaim and a motion to strike the counterclaim, asserting that it was untimely. Fletcher also filed an answer to the counterclaim. The trial court subsequently granted Fletcher's motion, deciding that it was untimely and would not be considered.

On May 1, 2012, over three years after his complaint had been filed, Fletcher filed a motion for letters rogatory and for out-of-state non-party discovery. The trial court granted these motions the following day. On June 22, 2012, Fletcher filed a motion to enlarge the case management deadlines, claiming that he needed more time to obtain discovery. Zupan objected to the request, and the trial court scheduled a hearing on the matter for August 16, 2012. But before the hearing was held, the case was assigned to a new trial court judge. Zupan then filed a motion for summary judgment on July 20, 2012, and Fletcher's counsel subsequently withdrew from the case.

On August 16, 2012, the trial court held a hearing and heard the request of Fletcher's new counsel to enter a limited appearance. At this hearing, Fletcher's new counsel claimed that he needed time for further discovery. In response, the trial court entered an order extending the case management deadlines, allowing thirty additional days for Fletcher to respond to Zupan's motion for summary judgment and conduct discovery. At a hearing held on September 10, 2012, the trial court entered a revised case management order, noting that several attorneys had appeared for Fletcher, that sufficient time had been allowed for discovery, and that no further discovery would be permitted. [2]

---

[2] Fletcher subsequently filed a motion to clarify and certify the order for interlocutory appeal, which the trial court denied.

The trial court also gave Fletcher until October 17, 2012 to file his response to Zupan's motion for summary judgment.

On October 17, 2012, Fletcher filed his response to Zupan's motion for summary judgment. In this response, Fletcher presented several new claims for relief that had not been set forth in his initial complaint, including claims of undue influence, breach of fiduciary duty, and tortious interference with an expectancy. Zupan filed a reply to this response, and the trial court held a hearing on Zupan's motion on November 14, 2012, and on May 13, 2013, the trial court granted Zupan's motion for summary judgment. Fletcher now appeals.

### I. Ownership of 401(k) Account

Fletcher first claims that the trial court erred when it considered the question of ownership of the 401(k) account, an issue which Fletcher did not raise in his complaint. Instead, Fletcher claims that this issue was first presented in Zupan's counterclaim, which the trial court initially rejected as untimely.

Generally, a compulsory counterclaim must be set forth in the defendant's responsive pleading, i.e. the answer to the plaintiff's complaint. See Ind. Trial Rule 13(A) ("A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party[.]"). And a compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Hilliard v. Jacobs, 927 N.E.2d 393, 401 (Ind. Ct. App. 2010), trans. denied (quoting T.R. 13(A)). Here, it is

7

apparent that the issue of the ownership of the 401(k) account arose out of the same transaction or occurrence that was the subject of Fletcher's claims and was therefore a compulsory counterclaim that should have been asserted in Zupan's answer. But this is not the end of our analysis.

Here, Fidelity filed a complaint for interpleader regarding the assets in the 401(k) account, naming both Fletcher and Zupan as defendants claiming ownership of the assets in the 401(k) account. Subsequently, the parties, including Fletcher, filed a joint motion regarding the interpleader which specifically stated, "There are conflicting claims for the assets of the 401(k) Account. Accordingly, Fidelity cannot distribute those assets to any interpleader defendant until the Court determines which interpleader defendant is entitled to the assets." Appellant's. App. p. 86. Thus, the issue of ownership of the 401(k) account was clearly placed before the trial court by all of the parties.

Fletcher notes that the trial court denied Zupan's counterclaim as untimely. But we do not consider this dispositive. First, as noted above, the issue of ownership of the 401(k) account had been brought before the trial court by way of Fidelity's complaint for interpleader and the parties' joint motion regarding the interpleader. Moreover, a trial court has inherent power to reconsider any of its previous rulings so long as the action remains *in fieri*, i.e., until judgment is entered. Gibson v. Evansville Vanderburgh Bldg. Comm'n, 725 N.E.2d 949, 952 (Ind. Ct. App. 2000). Thus, the trial court's ruling rejecting Zupan's counterclaim as untimely did not prevent the trial court from considering the issue of who owned the 401(k) account.

8

## II. Propriety of Summary Judgment

Fletcher next claims that the trial court erred in granting summary judgment in favor of Zupan. Our standard for reviewing a trial court's order granting a motion for summary judgment is well settled. Considering only those facts supported by evidence that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." DeHahn v. CSX Transp., Inc., 925 N.E.2d 442, 445 (Ind. Ct. App. 2010) (quoting Ind. Trial Rule 56(C)). We construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party. Id. But a *de novo* standard applies where the dispute is a question of law. Hochstetler Living Trust v. Friends of Pumpkinvine Nature Trail, Inc., 947 N.E.2d 928, 930 (Ind. Ct. App. 2011). The moving party bears the burden of making a *prima facie* showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. DeHahn, 925 N.E.2d at 445 (citing Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1270 (Ind. 2009)). Once the movant satisfies this burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact. Id. at 445-46. Where, as here, the trial court makes findings and conclusions in support of its entry of summary judgment, we are not bound by such findings and conclusions, but they aid our review by providing reasons for the trial court's decision. Hochstetler, 947 N.E.2d at 930.

9

In addressing the issue of the propriety of summary judgment, we first consider the question of whether Fletcher expanded the nature of his complaint in his response to Zupan's motion for summary judgment. In his complaint, Fletcher alleged only that Zupan committed forgery. Yet in his response to Zupan's motion for summary judgment, he claimed that Fletcher also exerted undue influence over Taylor, breached a fiduciary duty, and interfered with Zupan's expectancy. Zupan claims that this was improper, and we agree. If Fletcher wished to pursue new theories of recovery, then he should have moved to amend his complaint pursuant to Trial Rule 15. Fletcher cannot use a response to a motion for summary judgment as a means to amend his complaint.

In his reply brief, Fletcher claims that it would be inconsistent to permit Zupan to bring a counterclaim regarding the 401(k) account when he did not present this counterclaim in his answer, but not permit him to present new claims in his response to Zupan's motion for summary judgment. We note, however, that Fidelity filed a complaint for interpleader regarding the 401(k) account, and the parties filed a joint motion wherein they agreed that ownership of the 401(k) account needed to be determined. There is no similar agreement between the parties for the trial court to consider Fletcher's new claims. Accordingly, we will not consider Fletcher's arguments with regard to any claim outside that presented in his complaint.

Fletcher also claims that his complaint was not limited to an allegation of forgery. This is not so. Fletcher's complaint reads in relevant part:

5.    Subsequent to Taylor's death, plaintiff learned that defendant Mark Zupan ("Zupan") was purportedly named the beneficiary of Taylor's retirement accounts.

10

6. For many years prior to his death, Taylor resided in Crown Point, Indiana, and maintained his investments with Fidelity through Fidelity's office in Oakbrook Illinois.

7. Defendant Zupan resides in the state of North Carolina, and has also known Taylor for many years.

8. Soon after Taylor's move to the state of Arkansas, Zupan appeared at Taylor's former residence in Crown Point, Indiana, and represented to Taylor's caretakers at his residence that he (Zupan) was the executor of Taylor's estate, in order to obtain access to Taylor's personal residence.

9. Zupan is not and was not named as the executor of Taylor's estate; rather Taylor's parents, Charles Taylor and Elsie Taylor, serve as said executors.

10. On the basis of the false representations of Zupan to Taylor's caretakers, Zupan was able to gain access to Taylor's residence in Crown Point, Indiana, and on information and belief was also able to obtain information relating to Taylor's financial affairs, including his retirement accounts with Fidelity Investments.

11. On or about August 2, 2008, a change of beneficiary document, which purported to name Zupan instead of Plaintiff as beneficiary of the Fidelity retirement accounts, was deposited in the night drop box of Fidelity Investments office in Oakbrook, Illinois.

**12. On information and belief, the change in beneficiary form was forged by Zupan with the intention of obtaining the funds in Taylor's retirement accounts with Fidelity, and of depriving Plaintiff of those funds.**

13. But for the action of Zupan, the funds in the Fidelity retirement accounts would have been paid and delivered to the Plaintiff.

14. Plaintiff has been informed that Fidelity has placed a hold on distribution of the funds from the retirement accounts.

15. In the event Fidelity releases the funds in the retirement accounts to Zupan, the plaintiff will suffer immediate and irreparable harm, for which there is no adequate remedy at law.

WHEREFORE, Plaintiff prays this court for the following relief:

A. To enter a preliminary and permanent injunction against defendant Fidelity from distributing funds from Taylor's retirement accounts until such time as the rights of the remaining parties to this suit have been fully and finally adjudicated.

B. Find that but for Defendant's intentional tortious conduct, Plaintiff would have received the balance in the Fidelity retirement accounts;

B.[sic] Award Plaintiff judgment in such amount, plus the amount of any prejudgment interest;

11

C. Award punitive damages in an amount deterred by the court against Defendant Zupan; and

D. Award attorneys' fees plus any and all other relief that the Court deems fair and equitable.

Appellant's App. pp. 64-66 (emphasis added). Even a liberal reading of Fletcher's complaint reveals no indication of any other claim of relief other than forgery.[3]

This leaves us with the question of whether the trial court properly granted summary judgment in favor of Zupan with regard to the claim of forgery. In support of his motion for summary judgment, Zupan designated evidence showing that: Fidelity employee Rice spoke with Taylor, who told her that he wished to change the beneficiary of his retirement accounts; that Rice pre-filled the change-of-beneficiary forms with Zupan's name at Taylor's direction; that Rice shipped the change-of-beneficiary forms to Taylor's address in Arkansas via overnight delivery; that Zupan's mother remembered receiving a package from Fidelity, which she gave to her son; that Taylor soon thereafter gave his mother a package to return to Fidelity; that Rice received the change-of-beneficiary forms containing a signature that she identified as Taylor's signature; that Taylor's mother identified the signature on the change-of-beneficiary forms as her son's signature; that Zupan identified the signature on the forms as Taylor's signature; and that Zupan did not fill out or help Taylor complete any change-of-beneficiary form, was not present when Taylor signed the forms, and did not forge or sign Taylor's name to the forms.

---

[3] Even if we were to consider these claims, we agree with the trial court that Fletcher designated no evidence which would demonstrate a genuine issue of material fact with regard to his additional claims.

12

These designations were sufficient to establish, *prima facie*, that Zupan did not forge the change-of-beneficiary forms. Pursuant to Indiana summary judgment law, the burden then shifted to Fletcher to designate evidence demonstrating a genuine issue of material fact for trial. Zupan notes that Fletcher admitted that he had no direct knowledge or evidence that Zupan forged the change-of-beneficiary forms. Fletcher, however, claims that he did designate evidence which give rise to inferences which, construed in the light most favorable to him as the non-moving party, are sufficient to establish a genuine issue of material fact for trial.

We agree with Zupan that much of Fletcher's argument in this regard is to simply claim that Zupan has not eliminated all possibility of forgery or cast doubts on the credibility of Zupan's evidence. However, once Zupan established, *prima facie*, that there were no genuine issues of material fact, it was Fletcher's burden to come forward with designated evidence demonstrating a genuine issue of material fact. Fletcher insists that he did so. Specifically, Fletcher notes that he designated evidence which, if credited, could establish: that Zupan assisted Taylor in personal matters, including his finances; that Zupan telephoned Fidelity more times than he claims; that Zupan travelled to Taylor's home in Crown Point where he would have access to Taylor's financial information; that Taylor was in declining health and was expecting some paperwork from Fidelity, i.e., the limited trading authorization; that Taylor had told his mother that Fletcher was the beneficiary of the accounts; that Fidelity's records show that the change-of-benefits form was sent to Crown Point, not Arkansas; and that Rice admitted that

13

Taylor's signature on the change-of-benefits form was not "as perfect as his signatures prior" due to Taylor's declining health. Appellant's App. p. 601.

Fletcher essentially argues that, despite the lack of direct evidence, Zupan had the means, motive, and opportunity to forge the change-of-benefits forms and that his designated evidence is sufficient to create a factual issue for trial. We are inclined to agree. To be sure, Zupan designated evidence that, if credited, would defeat the claim of forgery. But we do not weigh evidence on summary judgment; instead, we construe all evidence and reasonable inferences in favor of the non-moving party. If Zupan's evidence is discredited, and Fletcher's evidence is credited, a reasonable jury could come to the conclusion that Fletcher proved his claim by a preponderance of the evidence. Admittedly, Fletcher's evidence is far from overwhelming. But summary judgment should not be used as an abbreviated trial, even where the proof is difficult or where the court may believe that the non-moving party will not succeed at trial. In re Rhoades, 993 N.E.2d 291, 298 (Ind. Ct. App. 2013). We therefore reverse the trial court's entry of summary judgment on the issue of forgery and remand for trial on this issue.

### III. Discovery

Lastly, Fletcher claims that the trial court abused its discretion when it closed discovery. Fletcher claims that the trial court should have continued discovery to allow him to seek out-of-state discovery. We disagree.

A trial court has broad discretion to rule on issues of discovery, and we will reverse only when the appealing party can show an abuse of that discretion. Up ham v. Morgan Cnty. Hosp., 986 N.E.2d 834, 839 (Ind. Ct. App. 2013), trans. denied. The trial

14

court abuses its discretion only when it reaches a conclusion against the logic and natural inferences to be drawn from the facts and circumstances before the court. Id. at 840. On appeal, we determine whether the evidence serves as a rational basis for the trial court's decision. Id. We may not reweigh the evidence or assess the credibility of witnesses. Id. Because the scope of discovery is highly dependent on the facts of each case, the fact-sensitive nature of discovery issues requires a high degree of deference to the decision of the trial court. Id.

Fletcher filed his complaint on February 24, 2009. Fletcher's first counsel withdrew and was replaced by his second counsel on July 13, 2009. On April 1, 2011, the trial court issued an order to show cause why the case should not be dismissed for failure to prosecute, and the case was dismissed on June 2, 2011. Fletcher's second counsel then withdrew, and his third counsel filed an appearance on October 14, 2011. The trial court reinstated the case on October 26, 2011, and the trial court issued a case management order on February 27, 2012 and set a trial date of October 23, 2012. At that time, the trial court ordered that all discovery be completed by August 31, 2012. Fletcher did not file for letters rogatory until May 2, 2012. Then, on June 12, 2012, Fletcher's third counsel withdrew. The trial court then allowed Fletcher thirty additional days to respond to Zupan's summary judgment motion and to conduct discovery for purposes of whether Zupan's fourth counsel could enter a limited appearance. The trial court did not close discovery until September 10, 2012. Thus, Fletcher had over three years, and four separate counsel, to conduct his discovery. That the trial court decided to finally close

discovery after this amount of time was not an abuse of the trial court's considerable discretion in such matters.

## Conclusion

The trial court did not err in considering the issue of the ownership of the 401(k) account because Fidelity filed a complaint for interpleader of the account and the parties filed a joint motion acknowledging that the account was at issue. The trial court erred in granting Zupan's motion for summary judgment because Fletcher designated some evidence creating a genuine issue of material fact with regard to forgery. Lastly, the trial court did not abuse its discretion when it closed discovery after the case had been pending for over three years.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

BRADFORD, J., and PYLE, J., concur.