## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 09 2020, 9:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael E. Polen, Jr.
Daniel J. Zlatic
Rubino Ruman Crosmer & Polen, LLC
Dyer, Indiana

ATTORNEYS FOR APPELLEE

J. Blake Hike
Larry L. Barnard
Carson LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Neal M. Siegel,

*Appellant-Plaintiff,*

v.

Sue M. Tomion,

*Appellee-Defendant.*

December 9, 2020

Court of Appeals Case No.
20A-CT-173

Appeal from the La Porte Circuit Court

The Honorable Thomas Alevizos, Judge

Trial Court Cause No.
46C01-1803-CT-460

**Brown, Judge.**

[1] Neal M. Siegel appeals the trial court's judgment of $51,500 based upon a jury verdict in his favor. Siegel raises two issues which we restate as:

I. Whether the trial court erred or abused its discretion in instructing the jury; and

II. Whether the trial court erred in entering judgment for damages in the amount awarded by the jury.

We affirm.

### Facts and Procedural History

[2] In 2016, Siegel was driving a vehicle when he was involved in an automobile accident with Sue Tomion. On March 23, 2018, Siegel filed a complaint against Tomion.[1] On November 7, 2018, the trial court scheduled a jury trial for November 25, 2019.

[3] On November 18, 2019, Siegel filed a supplemental proposed jury instruction including Proposed Jury Instruction No. 5, which states:

> The duty to abstain from injuring another applies to the sick, the weak, infirm, or previously injured, as well as to the strong and healthy, and when this duty is violated, the measure of damages is the injury and damage which results.
>
> The law provides that a wrongdoer takes a plaintiff as she finds a plaintiff, with all of plaintiff's illnesses and infirmities of body, and the defendant is responsible in damages for aggravating a previous physical condition. Even if you find from the evidence

---

[1] The record does not contain a copy of the complaint.

that because of a prior physical condition, the plaintiff may have been susceptible to injury, or that he/she suffered more because of a prior physical condition, this fact will not prevent the recovery of any and all damages caused by the defendant's conduct.

Where a preexisting condition existed, and where after an injury aggravating the condition results, but you cannot distinguish between the current injury or condition and the preexisting condition, so long as the fact of aggravation is established by the evidence in the case, the defendant whose negligence was the cause of the injury or aggravation is responsible for the entire damage.

Appellant's Appendix Volume II at 220.

[4] On November 25 and 26, 2019, the court held a jury trial. The court informed the jury that Tomion stipulated that her negligence caused the accident but disputed the nature, extent, and cause of some of Siegel's alleged injuries and damages.

[5] Siegel testified he had been a limousine driver for eighteen years and was involved in a car crash in April 2014, which resulted in injuries including "a neck issue" and "a back and hip issue." Transcript Volume II at 94. He testified about his treatment and pain before and after the 2016 crash. He indicated that doctors recommended a cervical laminectomy in 2015, but he could not pass the cardiac clearance for the procedure until he changed his lifestyle. He had the procedure at some point after the 2016 car crash and after he had lost forty pounds.

[6] The court admitted photos of the vehicles involved in the 2016 crash. Siegel testified that Tomion was braking when she struck the rear of his vehicle and that he "felt a big bump in the back of [his] car." *Id.* at 99. When asked how he was feeling immediately after the collision, he answered: "I felt a jolt in the bottom of my back right away, and I felt pain in my neck, but my neck was already messed up, so I wasn't sure what I was feeling in my neck." *Id.* at 100. He testified that an ambulance arrived but he did not use it because he thought he could still complete his ride, he was a long way from home, and he did not think it was necessary to go to the hospital. He testified that he saw a doctor six days after the accident regarding limitations in his neck, the appointment had been scheduled prior to the time of the accident, and he "did not discuss that accident, the second accident, with [the doctor] at that time. Not on the initial visit." *Id.* at 130.

[7] The court played the video deposition of Dr. Andrew Engel, Siegel's pain management physician, who testified in part that he treated Siegel following the 2014 crash, and that Siegel had degenerative disc disease prior to the 2016 accident. He testified about the surgery related to spinal stenosis that pre-existed the 2016 accident, that a CT scan after the accident showed "C3-4 spondylolisthesis, so again spondylolisthesis is offsetting of the bone, and some narrowing of the C5-6 disc and the multi-level facet disease, so there were changes in the facet joint associated with aging," and that Siegel "still needed resolution of the C3-4 spondylolisthesis that I thought was caused by the motor vehicle accident." Appellant's Appendix Volume II at 155, 157. The court

played the video deposition of Dr. Larry Salberg, a neurologist hired by defense counsel who conducted an examination of Siegel and his medical records in September 2019. Dr. Salberg testified that "almost all of the symptoms that he was complaining about and getting treated for were preexisting the motor vehicle accident of 2016." *Id.* at 55. The court also admitted Siegel's medical records.

[8]   During the discussion of the final instructions, the court and the parties discussed Final Instruction No. 6, which stated:

> If you find that the Plaintiff is entitled to recover, you must consider evidence of third-party source benefits Plaintiff received and whether Plaintiff must repay those benefits.
>
> Any amount Plaintiff is not required to repay will not be paid out of any verdict you award to Plaintiff after this trial is over. In determining your verdict, therefore, reduce what you would otherwise award Plaintiff by the amount of any benefits Plaintiff is not required to repay.

*Id.* at 202. The following exchange occurred regarding Final Instruction No. 6:

> [Siegel's Counsel]: Six, they actually took out the middle paragraph where it says, any amount plaintiff must repay, I would just ask that the entire pattern be given.
>
> THE COURT: Yes.
>
> [Siegel's Counsel]: I have the pattern if you'd like it.
>
> THE COURT: I have it.
>
> THE BAILIFF: What number is it?

THE COURT:  531.

[Siegel's Counsel]:  It's 531.

THE COURT:  Seven is ours anyway.  No problem with that?

[Siegel's Counsel]:  No problem, Judge.

Transcript Volume II at 157-158.[2]  The court ultimately gave Final Instruction No. 6.

[9]     In discussing another instruction,[3] Siegel's counsel asserted that the instruction was not the pattern and that "[t]here's 926(a) and 926(b)."[4]  After some discussion, the following exchange occurred:

---

[2] Indiana Model Civil Jury Instruction 531 states:

> If you find that [*plaintiff*] is entitled to recover, you must consider evidence of [worker's compensation][*name other collateral source payment*] benefits [*plaintiff*] received and whether [*plaintiff*] must repay those benefits.
>
> Any amount [*plaintiff*] must repay for those benefits will be paid out of any verdict you award to [*plaintiff*] after this trial is over.  Do not reduce your verdict by the amount of those benefits [*plaintiff*] must repay.
>
> [Any amount (*plaintiff*) is not required to repay will not be paid out of any verdict you award to (*plaintiff*) after this trial is over.  Therefore, in determining your verdict, reduce what you would otherwise award (*plaintiff*) by the amount of any benefits (*plaintiff*) is not required to repay.]

[3] During the beginning of the discussion concerning this instruction, the court stated: "Eight is pattern." Transcript Volume II at 158.  On appeal, the parties do not point to the proposed instruction the court was discussing.

[4] Indiana Model Civil Jury Instruction 926(a) states: "A pre-existing condition is a [physical][mental] condition that existed before [the collision][the incident][*describe event*].  [*Plaintiff*] may recover damages for the extent that [*defendant*] aggravated [*plaintiff*]'s [*specify pre-existing condition*].  [*Plaintiff*] cannot, however, recover damages for [*specify pre-existing condition*] itself."  Indiana Model Civil Jury Instruction 926(b) states: "[*Plaintiff*] is [also] not entitled to recover damages for any condition that occurred after, and was not caused by, [the collision][the incident][*describe event*]."

THE COURT: What do you want to use? Before the collision in question?

[Tomion's Counsel]: Before the May 21st –

* * * * *

[Tomion's Counsel]: May 21, 2016, accident.

[Siegel's Counsel]: That's fine.

THE COURT: – accident. Plaintiff may recover damages to the extent that the defendant aggravated plaintiff's pre-existing condition.

[Tomion's Counsel]: Do you want to put specific –

[Siegel's Counsel]: I mean, if we were going to put something specific I would just say pre-existing neck and back condition.

THE COURT: Pre-existing neck and back condition?

[Tomion's Counsel]: That's fine.

THE COURT: Plaintiff cannot, however, recover damages for the prior condition, neck and back condition. All right. Nine is pattern. No problem, right?

[Siegel's Counsel]: That's fine.

*Id.* at 159. The court gave the jury Final Instruction No. 9, which stated:

> A pre-existing condition is a physical condition that existed before the collision on May 21, 2016. Plaintiff may recover damages for the extent that the Defendant aggravated Plaintiff's neck and back condition. Plaintiff cannot, however, recover damages for the neck and back condition itself.

Appellant's Appendix Volume II at 205.

[10] With respect to Siegel's supplemental Proposed Instruction No. 5, Tomion's counsel objected and stated: "My objection is that it is covered by – if he wants the combination of model instruction 925 and 926(a), which has already been agreed to, I think what we could do is add 925 and then that would cover this instruction, which is not a pattern instruction."[5] Transcript Volume II at 161. Siegel's counsel mentioned *Dunn v Cadiente*, 516 N.E.2d 52 (Ind. 1987), *reh'g denied*, and asserted that the instruction covered the issue of apportionment. After some discussion, the court indicated it would give the pattern instruction and allow Siegel's counsel to discuss *Dunn* to the jury.

[11] During closing argument, Siegel's counsel argued:

> The big question that we have to ask here and the big question for the jury is you have to determine – you know, their argument is [Siegel] had all these horrible things before, which we don't dispute. We argue that he was doing better before this crash. The issue you have to figure out is was he hurt in this crash? And all of the evidence says yes, including their own doctor. . . . And the law of aggravation, folks, is very simple. If somebody has pre-existing problems and they're hurt, they're responsible for the aggravation. One thing I want to make perfectly clear, and when the judge instructs you on this, listen to the instruction, what is the responsible cause? It doesn't have to be a single responsible cause. There can be multiple responsible causes which is what they say. And given the fact that they are a responsible cause and they can't differentiate between what it is, unfortunately they're on the hook for the whole thing; and that's

---

[5] Indiana Model Civil Jury Instruction 925 states: "[*Defendant*] is not excused from responsibility just because [*plaintiff*] had [*describe physical or mental condition*] at the time of [the collision][the incident][*describe event*] that made [him][her] more likely to be injured."

the law.  The crash also caused new injuries.  There's no dispute of that in the evidence.

Transcript Volume II at 176-177.  Siegel's counsel suggested total damages of over $1,000,000 to the jury.

[12]  During the closing argument, Tomion's counsel stated that "there is just absolutely nothing fair about a $1 million judgment in a ten-mile-an-hour accident."  *Id.* at 185.  He stated that "[t]he question is: Is all the pain he's having because of the accident?"  *Id.* at 186.  He also stated:

> Now, if I had failed to convince you of this and you find yourselves considering this and you're down there and get back there and you start thinking about 65 or $66,000.00 in medical expenses, I would still suggest to you that pain and suffering is no more than 25 or $30,000.00.  And, again, the reason for that is because I don't think any of this stuff is related to the accident and he already had pain to begin with, so why – how does he justify compensation of up to $1 million in this case?  I don't think so. . . .  But when you look at it and consider it, you consider all of the testimony, consider all of the medical records, you consider everything that you've heard today, we would ask that you render a verdict in the amount of $1,000.00 up to $30,102.00.

*Id.* at 208-209.

[13]  The jury found in Siegel's favor and awarded him $51,500.  The court accepted the verdict and entered judgment accordingly.  On December 4, 2019, Siegel filed a Motion to Correct Error and Request for a New Trial Pursuant to Trial Rule 59, which was deemed denied.

## *Discussion*

### I.

[14]    The first issue is whether the trial court erred or abused its discretion in not giving the jury Siegel's Proposed Instruction No. 5 and in providing the jury with Final Instruction No. 6. The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair and correct verdict. *Blocher v. DeBartolo Props. Mgmt, Inc.*, 760 N.E.2d 229, 235 (Ind. Ct. App. 2001), *trans. denied*. Trial courts generally enjoy considerable discretion when instructing a jury. *Humphrey v. Tuck*, 151 N.E.3d 1203, 1207 (Ind. 2020). When a party challenges a trial court's decision to give or refuse a proposed instruction, a reviewing court considers three things: (1) whether the instruction correctly states the law; (2) whether the instruction is supported by evidence in the record; and (3) whether the instruction's substance is covered by other instructions. *Id.* "Only the first consideration is a legal question on which the trial court receives no deference." *Id.* The other two are reviewed for an abuse of discretion. *Id.*

[15]    Siegel argues the trial court erred in refusing to give his Proposed Instruction No. 5, asserts it was an accurate statement of the law, and cites *Dunn v. Cadiente*, 516 N.E.2d 52 (Ind. 1987), *reh'g denied*. Specifically, he emphasizes the third paragraph of Proposed Instruction No. 5. He contends that the instruction was supported by the evidence, the instruction was not covered by

other instructions, and that the jury was left with the incorrect impression that he continued to have the burden of proof regarding causation of damages.

[16] In *Dunn*, Robert Dunn appealed a judgment awarding damages of $24,065 following a bench trial in his medical malpractice action against Dr. Samson S. Cadiente. 516 N.E.2d at 53. The Indiana Supreme Court held:

> It is axiomatic that, before liability can be imposed, there must be proof that the defendant's negligence proximately caused the plaintiff's harm. *Yaney by Yaney v. McCray Memorial Hospital* (1986), Ind. App., 496 N.E.2d 135. An essential element of recovery in a negligence action is that the injury be the proximate result of a defendant's negligence. *Hartman v. Memorial Hospital of South Bend* (1978), 177 Ind. App. 530, 380 N.E.2d 583. In order for a plaintiff to carry his burden of proof, the evidence must establish the element of proximate cause connecting the alleged wrongful act with the injury. *Palace Bar Inc. v. Fearnot* (1978) 269 Ind. 405, 381 N.E.2d 858. Just because there is proof that some of the claimed injury and loss was caused by the breach of duty does not necessarily mean that all damages resulted from the breach.

*Id.* at 55. The Court held:

> A pre-existing condition or susceptibility, if aggravated by a defendant's conduct, may result in a defendant's full liability for the resulting injury and loss. However, if the pre-existing condition, standing alone, independently causes injury and loss, a defendant will not be liable for such damages.

*Id.* at 56.

[17] The Court stated:

To the extent that there may have been conflicting evidence regarding the extent to which all of Dunn's injuries and losses were causally related to Cadiente's conduct or the congenital anomaly, the question may be viewed as one of apportionment of damages. Upon this issue, Prosser favors the following approach:

> Where a logical basis can be found for some rough practical apportionment, which limits a defendant's liability to that part of the harm which he has in fact caused, it may be expected that the division will be made. Where no such basis can be found and any division must be purely arbitrary, there is no practical course except to hold the defendant for the entire loss, notwithstanding the fact that other causes have contributed to it.

Prosser[, Law of Torts, 4th Edition,] p. 314. Consistent with a plaintiff's burden to prove causation, we do not view this consideration as transferring to a defendant the burden to prove the existence of a logical basis for apportionment. The burden of proof remains with the plaintiff. In order to benefit from this rule, it is therefore plaintiff's burden to prove the absence of any such basis for apportionment.

*Id.* The Court observed that "[v]iewing the evidence favorable to the judgment, we find it does not inescapably lead to the conclusion that apportionment is impossible" and held that "[t]hus the trial court did not err in failing to award damages for all of the injuries and losses claimed by plaintiff." *Id*.

As pointed out by Tomion, Siegel's Proposed Instruction No. 5 fails to take into consideration the first portion of the Court's quotation of Prosser. Specifically, Proposed Instruction No. 5 did not state that "[w]here a logical basis can be found for some rough practical apportionment, which limits a defendant's

liability to that part of the harm which he has in fact caused, it may be expected that the division will be made." *See id.* (quoting Prosser, *supra*., p. 314). Nor did Proposed Instruction No. 5 inform the jury that "[w]here no such basis can be found and any division must be *purely arbitrary*, there is no practical course except to hold the defendant for the entire loss." *See id.* (quoting Prosser, *supra*., p. 314) (emphasis added). The proposed instruction would have required additional clarification instructions and may have confused the jury in its proposed form. We find no abuse of discretion in the trial court's denial of the proposed instruction.[6]

[19]    Siegel also argues that the trial court erred in giving Final Instruction No. 6. He points to Indiana Model Civil Jury Instruction 531 which provides:

> If you find that [*plaintiff*] is entitled to recover, you must consider evidence of [worker's compensation][*name other collateral source payment*] benefits [*plaintiff*] received and whether [*plaintiff*] must repay those benefits.
>
> Any amount [*plaintiff*] must repay for those benefits will be paid out of any verdict you award to [*plaintiff*] after this trial is over. Do not reduce your verdict by the amount of those benefits [*plaintiff*] must repay.
>
> [Any amount (*plaintiff*) is not required to repay will not be paid out of any verdict you award to (*plaintiff*) after this trial is over. Therefore, in determining your verdict, reduce what you would

---

[6] To the extent Siegel asserts that the trial court's instruction that he "cannot . . . recover damages for the neck and back condition itself" is in contradiction to *Dunn*, Appellant's Brief at 29-30 (quoting Transcript Volume II at 215), we note that he did not object at trial to Final Instruction No. 9 based upon *Dunn* and ultimately agreed to the instruction.

otherwise award (*plaintiff*) by the amount of any benefits (*plaintiff*) is not required to repay.]

He asserts that the trial court improperly substituted the third bracketed paragraph in place of the second paragraph.[7] He also asserts that Final Instruction No. 6 was not supported by evidence because there was no evidence admitted at trial of collateral source payments that did not need to be repaid by him. He argues that "the only evidence in the record consisted of the fact that Siegel was required to repay Meridian Health for payments it made to Siegel's medical providers for services necessitated by Tomion's negligence."[8] Appellant's Brief at 35.

[20] To the extent Siegel asserts that Final Instruction No. 6 was an incomplete and inaccurate statement of the law because it informed the jury to reduce what it would otherwise award Plaintiff by the amount of any benefits Plaintiff is not required to repay, we disagree. This statement is found in paragraph 3 of Indiana Model Civil Jury Instruction 531. With respect to Siegel's argument that the trial court failed to instruct the jury not to reduce the verdict by the amounts of those benefits he must repay, we note that Final Instruction No. 9

---

[7] Siegel notes: "Words, phrases, and sentences that appear in brackets are alternatives or additions to instructions, to be used when applicable to the particular case on trial." Appellant's Brief at 34 n.1 (quoting *Indiana Model Civil Jury Instructions*, 2014 Ed., Guidelines for Judges and Attorneys, p. xxxi).

[8] While Siegel cites to the record in his statement of facts regarding whether he had to repay certain payments, he does not cite to the record for this assertion in his argument section. Ind. App. Rule 46(A)(8)(a) provides that each contention in the argument section of an appellant's brief "must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22."

provided in part that "Plaintiff may recover damages for the extent that the Defendant aggravated Plaintiff's neck and back condition," and Final Instruction No. 13 provided in part:

> You must now determine the total amount of money that will fairly compensate Neal M. Siegel for those elements of damage that you find were proved by the greater weight of the evidence to have resulted from the collision caused by Sue M. Tomion. In deciding the amount of money you award, you may consider:
>
> \* \* \* \* \*
>
> (4) The reasonable value of necessary medical care, treatment, and services Neal M. Siegel has incurred and will incur in the future as a result of the injuries;

Appellant's Appendix Volume II at 205, 209. In light of these additional instructions, we cannot say that the trial court abused its discretion.

## II.

[21] The next issue is whether the trial court erred in entering judgment for damages in the amount awarded by the jury. Siegel argues the evidence demonstrates that the jury's award of $51,500 was not within the bounds of the evidence.

[22] We afford a jury's damage awards great deference on appeal. *Sims v. Pappas*, 73 N.E.3d 700, 709 (Ind. 2017). A damage award will not be reversed if it falls within the bounds of the evidence. *Id.* We look only to the evidence and inferences therefrom which support the jury's verdict, and will affirm it if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting. *Id.* "Appellate courts will not substitute their idea of

a proper damage award for that of the jury." *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind. 2001) (quoting *Prange v. Martin*, 629 N.E.2d 915, 922 (Ind. Ct. App. 1994), *reh'g denied*, *trans. denied*). "We will not deem a verdict to be the result of improper considerations unless it cannot be explained on any other reasonable ground." *Id.* (quoting *Prange*, 629 N.E.2d at 922). "We cannot invade the province of the jury to decide the facts and cannot reverse unless the verdict is clearly erroneous." *Id.* (quoting *Annee v. State*, 256 Ind. 686, 690, 271 N.E.2d 711, 713 (1971), *reh'g denied*).

[23] The record reveals that Siegel had been involved in a car crash in April 2014, which resulted in injuries including "a neck issue" and "a back and hip issue." Transcript Volume II at 94. During his deposition, Dr. Salberg testified:

> After careful review and thought and going over what the patient told me in the IME it's my opinion that almost all of the symptoms that he was complaining about and getting treated for were preexisting the motor vehicle accident of 2016. He had been in several motor vehicle accidents prior and he had been seeing specialists, including neurosurgeons and pain management experts for several years before this accident occurred.
>
> *     *     *     *     *
>
> I felt that there may have been a mild exacerbation of the preexisting neck issue with a simple, simple whiplash.

Appellant's Appendix Volume II at 55-56. He also expressed his opinion regarding the degenerative nature of some of Siegel's injuries. When asked if he agreed with Dr. Gandhi's assessment in 2017 that Siegel needed surgery due to

what occurred in 2014, Dr. Salberg answered: "I do a hundred percent, I do a hundred percent." *Id.* at 73. With respect to spondylolisthesis, he testified on cross-examination:

> [I]f you look at what the studies show it's noted after the accident. And it could have been maybe due to the accident. I told you that, but it was a one plus. That's usually not a real painful situation and, you know, they didn't do surgery because he had a grade one spondylolisthesis, you know. They did it for other reasons, but even if the accident did cause it it also could be part of his degenerative disease, process like you point out, you know. It's a combination.

*Id.* at 123-124. Plaintiff's Exhibit No. 13 consists of a summary of Siegel's medical bills and includes $144,833.92 of the total amount billed, the amount paid by Meridian Health of $9,470.59, downward adjustments of $79,762.07, and a balance remaining of $55,601.26. Based upon the record, the award was within the range of evidence presented and we do not interfere with the jury award.

[24] For the foregoing reasons, we affirm the trial court's order.

[25] Affirmed.

Vaidik, J., and Pyle, J., concur.